CARL LEWIS SMITH *v.* STATE OF INDIANA.

[No. 671S186. Filed May 1, 1972.]

*John R. Brant, II,* Public Defender, of Richmond, *Harlan, Schussler & Keller,* of Richmond, for appellant.

*Theodore L. Sendak,* Attorney General, *Michael Schaefer,* Deputy Attorney General, for appellee.

PRENTICE, J.—Defendant (Appellant) was found guilty in a trial by jury on the offense of selling heroin. His motion to correct errors raises the issue of entrapment and the admissibility of contraband into evidence, such objection being predicated upon a break in the chain of possession, citing *Graham* v. *State* (1970), 255 Ind. 237, 255 N. E. 2d 652. The case at bar is easily distinguished from Graham, *supra,* and we find no merit to Defendant's claim of inadmissibility.

The doctrine of entrapment has been elaborately analyzed in *Sorrels* v. *United States* (1932), 287 U. S. 435, 53 S. Ct. 210, 77 L. Ed. 413 and in *Sherman* v. *United States* (1958), 356 U. S. 369, 78 S. Ct. 819, 2 L. Ed. 2d 848 and very recently reviewed and properly applied by this Court in *Gray* v. *State*

(1967), 249 Ind. 629, 231 N. E. 2d 793. It would serve no useful purpose here to attempt an elaborate dissertation upon the doctrine and the somewhat conflicting theories regarding its application. Chief Justice Arterburn, writing for a unanimous court, in *Gray* v. *State, supra,* met a situation almost identical to the one at bar and applied the doctrine as we believe to have been there required and to be required here.

Various reasons have been cited for the development of the defense of entrapment, and consequently the courts have not always been in agreement with respect to the circumstances under which it should apply. There is general accord, however, with the following statement taken from *Sorrels* v. *United States, supra:*

> "* * * When criminal design originates not with the accused, but is conceived in the mind of the government officers, and the accused is by persuasion, deceitful representation, or inducement lured into the commission of a criminal act, the government is estopped by sound public policy from prosecution therefor." 77 L. Ed. at 418.
>
> "This does not mean that the police may not act so as to detect those engaged in criminal conduct and ready and willing to commit further crimes should the occasion arise. Such indeed is their obligation. It does mean that in holding out inducements they should act in such a manner as is likely to induce to the commission of crime only these persons and not others who would normally avoid crime and through self-struggle resist ordinary temptations." *Sherman* v. *United States, supra,* 356 U. S. at 383-84.

Thus, if the government agents merely hold out an opportunity for the commission of the crime, and the offender takes advantage of that opportunity, he cannot complain of an entrapment, because it cannot be said that the criminal conduct was the product of the agents' creative activity.

> "To determine whether entrapment has been established, a line must be drawn between the trap for the unwary innocent and the trap for the unwary criminal." *Sherman* v. *United States, supra,* 356 U. S. at 372.

The evidence before us is clear and uncontroverted. All of it, in this connection, comes from the agent who participated in the scheme to trap the defendant. The police, through their informer, advised the defendant of an acquaintance who made pornographic moving pictures. Thereafter, Narcotics Agent, John Chmelik, appeared at the request of the local police, and was introduced to Defendant by the informer. The first words spoken at this meeting were by the agent who testified, "I told Mr. Smith that I had heard that he was interested in being in fornographic (sic) films." (Tr. p. 130). The conversation for the next several minutes concerned pornographic pictures, prostitutes and narcotics traffic. Precisely what was said by whom cannot be determined from the record, but the defendant indicated that he would like to perform for such pictures, and the agent told him that he would consider him and that he would pay him but that at that time he was working on a location. (Tr. p. 104). The agent then told the defendant that he had some prostitutes working for him in Indianapolis and needed some drugs for them (Tr. p. 105) and asked the defendant if he knew where he could get some narcotics. (Tr. p. 105 and p. 131). Defendant then told the agent that he had a source. (Tr. p. 105). Thereupon, the defendant attempted to contact his "source" but failed. By arrangement between them, the defendant and the agent met the following day; the "source" was contacted, and a purchase was made with the defendant ostensibly acting as intermediary.

As said by Chief Justice Arterburn in *Gray* v. *State, supra,* "Here we have no evidence whatever that this appellant, before he was approached by this informant, had been engaged in the sale of heroin or that he had any intent to make a sale before he was asked to do so by a plan of law enforcement officers. * * * If law enforcement officers use a scheme or plan to disclose illegal activities of one charged with a crime, then they must also bring forward evidence to show that that party was not innocently lured and enticed to

commit the illegal act." 249 Ind. at 634. The burden, then, is clearly upon the State, under such circumstances, to convince the trier of facts, beyond a reasonable doubt, that there was no entrapment. No attempt was made by the State to carry this burden. Not one shred of evidence was produced in this connection, hence the evidence was insufficient, as a matter of law.

There is another closely related but yet somewhat different reason why the judgment should be reversed. The theme emerges in the cases hereinabove cited and was ultimately clearly stated by this Court in *Walker* v. *State* (1970), 255 Ind. 65, 262 N. E. 2d 641, wherein we permitted the State to introduce hearsay testimony to show "probable cause," saying:

> "When appellant evoked the defense of entrapment he imposed upon the State the requirement of proving that it had probable cause of suspecting that the appellant was engaged in illegal conduct." (Citing *Heath* v. *United States* [10th Cir. 1948] 169 F. 2d 1007.) 262 N. E. 2d at 645.

We, therefore, have clearly adopted or embraced a rule of law that before the State sets into operation a scheme to trap a particular suspect, there must be probable cause for the suspicions. We recognize the absolute necessity, under certain circumstances, of permitting police officers to use this method of detecting crimes and apprehending criminal suspects. The illicit drug traffic running rampant through our society today, the havoc that it is wreaking and its secretive nature and the difficulty of its detection are compelling reasons for permitting this method of criminal detection and apprehension. In view of the magnitude of this problem, it may well be in order to consider means of allowing a greater latitude of investigative procedures in such cases, provided, it can be done without endangering substantial individual rights. It is, nevertheless, a repugnant practice, distasteful at its best and intolerable at its worst. Justice Frankfurter in his separate concurring opinion in *Sherman* v. *United States, supra,* stated:

"* * * The courts refuse to convict an entrapped defendant, not because his conduct falls outside the proscriptions of the statute, but because, even if his guilt be admitted, the methods employed on behalf of the government to bring about conviction cannot be countenanced. * * * Public confidence in the fair and honorable administration of justice, upon which ultimately depends the rule of law, is the transcending value at stake. * * * The crucial question, not easy to answer, to which the court must direct itself is whether the police conduct revealed in the particular case falls below standards, to which common feelings respond, for the proper use of governmental power." 356 U. S. at 380-82.

The rule of probable cause, above stated, is entirely consistent with the views expressed by Justice Frankfurter and furthers the public interest, in that it does not offend against generally acceptable standards, is simple in its requirements and application and its rigid enforcement would not thwart the reasonable and logical efforts of law enforcement officers.

In the case at bar, even should we differ in our opinions as to whether the offense was conceived and enticed by the agent, there can be no doubt that no evidence was presented to render the defendant suspect of any offense prior to the time the State's scheme was set into motion. Probable cause for "baiting the trap" was therefore absent, and the work product of the scheme cannot be utilized, thereby condoning and encouraging that which was illegal in the first instance.

The judgment of the trial court is reversed and the trial court is directed to grant a new trial.

Arterburn, C. J. and DeBruler and Hunter, JJ., concur; Givan, J., dissents with opinion.

## Dissenting Opinion

GIVAN, J.—The majority relies on *Gray* v. *State* (1967), 249 Ind. 629, 231 N. E. 2d 793, 12 Ind. Dec. 218, and cases cited therein. I have no quarrel with the proposition of law stated in the *Gray* case. However, the facts in that case

were quite different from the facts in the case at bar. In *Gray* this Court condemned the practice of police officers deliberately creating a situation which might entice an otherwise innocent person into the commission of a crime thereby creating a situation through their own overt acts upon which they could make an arrest. In the *Gray* case the police officers gave an informant an amount of money and sent him to make a purchase of narcotics from a person of whom they had no information as to any previous trafficking in drugs. In the case at bar the police officer merely let it be known to the appellant that he was in the market for narcotics. It was the appellant who set in motion the activities which led to his arrest by volunteering the information that he had a source of narcotics, and it was the appellant who led the officers to that source and obtained the narcotics himself. In *Gray* the officers set up a situation of express solicitation on their part. In the case at bar the officer merely created an opportunity for the appellant to carry out his natural propensity to commit the crime. The mere creation of the opportunity to commit a crime is not entrapment. *Smith* v. *U. S.* (7th Cir. 1964), 337 F. 2d 450; *Walker* v. *State* (1970), 255 Ind. 65, 262 N. E. 2d 641, 23 Ind. Dec. 104.

In the case at bar the police officers obviously carefully observed the law as set out in the above cases so as not to be guilty of entrapment. The majority opinion has by the misapplication of the acknowledged law in Indiana to the facts in this case placed undeserved blame on good police officers for the necessity of a re-trial of this cause.

Having reviewed this and other errors assigned by the appellant, I find no reversible error in this case and would, therefore, dissent from the majority's decision to reverse.

NOTE.—Reported in 281 N. E. 2d 803.