LEONARD RAY THOMPSON v. STATE OF INDIANA.

[No. 1071S299. Filed December 20, 1972.
Rehearing denied February 1, 1973.]

*Forrest Bowman, Jr.,* of Indianapolis, for appellant.

*Theodore L. Sendak,* Attorney General, *Stephen J. Cuthbert,* Deputy Attorney General, for appellee.

ARTERBURN, C.J., — Defendant-Appellant, Leonard Ray Thompson, was charged in a two-count affidavit with both the possession (Count I) and the sale (Count II) of dangerous drugs, to wit: Lysergic acid diethylamide (hereinafter sometimes referred to as LSD). Acts 1961, Ch. 45, § 3, p. 81 [*Burns' Ind. Stat. Ann.* § 35-3333 (1969 Repl.)] subsequently amended by IC 1971, 16-6-8-3 (a) and (c) [*Burns' Ind. Stat.*

*Ann.* § 35-3333 (a) and (c) (1972 Supp.)]. He was tried by a jury and found guilty on both Counts. On Count I, *possession* of dangerous drugs, the trial court imposed a suspended sentence of imprisonment of not less than one year and not more than ten years. Appellant was fined $25.00 plus court costs on this charge. On Count II, *sale* of dangerous drugs, Appellant received a sentence of not less than one year and not more than ten years. He was also finded $25.00 and costs for this offense.

Appellant urges two grounds for reversal: First, he contends that he was entrapped and unlawfully induced to commit the offenses charged. He further maintains that the imposition of sentence for the *sale* of dangerous drugs under Count II constitutes double jeopardy since the crime of *possession*, as contained in Count I, is an included offense of the crime of selling dangerous drugs. U.S. CONST. amend. V and XIV: IND. CONST. art. I, § 14.

The testimony reveals that Chmelik, a special agent of the Federal Bureau of Narcotics and Dangerous Drugs, accompanied by an informant known as Katz, contacted a certain Rob Nau at Nau's residence in Bloomington, Indiana, in order to purchase a pound of mescaline. At Nau's request, Chmelik displayed $1400 for the purchase; however, Chmelik and Katz left Nau's residence since Nau was apparently unable to locate his source of supply. The next day, Chmelik telephone Nau who stated that he then possessed the mescaline. When Chmelik and Katz arrived at the same residence in Bloomington, Nau instructed them to follow him to another residence where they encountered the defendant, Leonard Ray Thompson. Chmelik informed Thompson that Nau had advised him that a pound of mescaline was available for sale. Thompson replied that he didn't have any mescaline, but that he did have LSD, approximately 250 "doses" at $2.50 per tablet.

Chmelik then left the residence to examine a sample tablet. Upon his return, Thompson displayed three amber bottles con-

taining approximately 250 tablets. Chmelik asked Thompson to accompany him outside so that Chmelik could give Thompson the money and take delivery. Thompson was arrested by Chmelik as they approached the agent's car.

It should be noted that the facts of this case involve an unusual situation for a claim of entrapment. Normally, *the initial suspect becomes the ultimate defendant. See eg. Sherman v. United States* (1958), 365 U.S. 369, 78 S. Ct. 819, 2 L. Ed. 2d 848; *Sorrells v. United States* (1932), 287 U.S. 435, 53, S. Ct. 210, 77 L. Ed. 413, 86 A. L. R. 249. *Gray v. State* (1967), 249 Ind. 629, 231 N. E. 2d 641; *cf. Walker v. State* (1970), 255 Ind. 65, 262 N. E. 2d 641; *See generally* Note, 38 *NOTRE DAME LAW.* 741 (1962-63). In this case, however, *a previously unsuspected third-party stranger, whom no one intended to trap, is the ultimate defendant.* Three recent federal court cases have met this issue, concluding that the defense of entrapment is not available in such a situation. We believe that these cases achieve a logical result and we adopt their reasoning:

> "Where a third party, who does not know the true identity of the Government agent, unwittingly leads the Government agent to the defendant, there is no entrapment because it is the third party who induces the initial violation, not the Government agent. Therefore, the Government is not "the initiator of the defendant's illegal acts in the sense of having induced the defendant to do what the defendant would otherwise not have been willing to do." (citations omitted).

*United States v. DeLoache* (W. D. Mo. 1969), 304 F. Supp. 183, 186; *See also United States v. Fox* (7th Cir. 1971), 437 F. 2d 733 and *United States v. Romano* (2nd Cir. 1960), 278 F. 2d 202.

Proof of entrapment constitutes a defense to the crime charged and is a question of fact for the jury. *Osburn v. United States* (1966), 385 U.S. 323, 87 S.Ct. 429, 17 L. Ed. 2d 394; *Masciale v. United States* (1958), 356 U.S. 386, 78 S. Ct. 827, 2 L. Ed. 2d 859. In this case

the jury was properly instructed on this issue. After reviewing the record, we conclude that there is sufficient evidence of probative value to support the verdict and the finding that there was no entrapment. *Riner* v. *State* (1972), 258 Ind. 428, 281 N. E. 2d 815; *Gann* v. *State* (1971), 256 Ind. 429, 269 N. E. 2d 381. *See also Smith* v. *State* (1972), 258 Ind. 415, 281 N. E. 2d 803, 805.

From the very beginning of his activities, the Government agent, in this case, simply allowed events to take their natural course. Having properly commenced an investigation centering upon a prime suspect, the agent may follow it to its logical conclusion as a means of apprehending the accused even though the accused turns out to be a third-party stranger. As Givan, J., observed in *Walker* v. *State* (1970), 255 Ind. 65, 262 N. E. 2d 641, 645:

"Investigations are not conceived and completed instanter. All criminal investigations by their very nature must be a series of steps calculated to increasingly gain additional information based upon prior acquired lesser information."

We, therefore, conclude that there was no entrapment in this case.

Appellant next complains that he has been subjected to double jeopardy. We understand the essence of his argument to be that the imposition of sentence under Count II, *sale* of dangerous drugs, was improper since Appellant had already been sentenced for the *possession* of dangerous drugs under Count I.

The Double Jeopardy clause is assurance that the State will not be allowed to make *repeated attempts to convict* an accused for the same offense. U.S. CONST. amend. V and XIV; IND. CONST. Art. 1, § 14; *See Benton* v. *Maryland* (1969), 395 U.S. 784, 89 S. Ct. 2056, 23 L. Ed. 2d 707; *Green* v. *United States* (1957), 355 U.S. 184, 78 S. Ct. 221, 2 L. Ed. 2d 199, 61 A. L. R. 2d 1119; *Armentrout* v. *State* (1938), 214 Ind. 273, 15 N. E. 2d 363. Since Appellant

has been subjected to *only one judicial proceeding* for the offenses charged, his claim of double jeopardy is inappropriate. *Kokenes* v. *State* (1938), 213 Ind. 476, 13 N. E. 2d 524.

However, he has received, in effect, double punishment for a single offense arising from but one set of operative circumstances. *See Kokenes* v. *State, supra.* We recognize that even the entry of judgment and the imposition of a suspended sentence of imprisonment is additional punishment. *See* IC 1971, 35-7-1-1; IC 1971, 35-7-2-1 and -2 *[Burns' Ind. Stat. Ann.* §§ 9-2209-11 (1956 Repl. and 1972 Supp.)]; *See also Street* v. *New York* (1969), 394 U.S. 576, 89 S. Ct. 1354, 22 L. Ed. 2d 572, 578 n. 1 and *Sibron* v. *New York* (1968), 392 U.S. 40, 88 S. Ct. 1889, 20 L. Ed. 2d 917.

By its definition, a "sale" necessarily includes "possession" under the offense charged in this case:

> "'Sale' means any and every sale and includes (1) manufacturing, [harvesting,] processing, transporting, handling, packing or any other production, preparation or putting up; (2) exposure, offer or any other proffer, [whether or not the offeror has the present ability or capability to complete said transaction by delivering dangerous drugs]; (3) *holding, storing, or any other possession;* (4) dispensing, giving, delivering or any other supplying; and (5) applying, administering or any other using." (emphasis added)

Acts 1961, ch. 45 § 2 p. 81; *Subsequently amended by* Acts 1967, ch. 20, § 1, p. 24, Acts 1969, ch. 225, § 1 p. 851, IC 1971, 16-6-8-2 (n) *[Burns' Ind. Stat. Ann.* § 35-3332 (h) (1972 Supp.)] (bracketed portion added to previous version by 1971 General Assembly).

We hold that before the court may enter judgment and impose sentence upon multiple counts, the facts giving rise to the various offenses must be independently supportable, separate and distinct. *See Havener* v. *State* (1955), 234 Ind. 148, 125 N. E. 2d 25; *Carter* v. *State* (1951), 229 Ind. 205, 96 N. E. 2d 273; *Kokenes* v. *State* (1938), 213 Ind. 476, 13 N. E. 2d 524. Under the facts of

this case, the trial court should have entered judgment only upon the greater offense, the *sale* of dangerous drugs. *Id.*

The trial court is therefore directed to vacate both the judgment and sentence for Count I, possession of dangerous drugs.

The judgment of the trial court is otherwise affirmed.

Givan, Hunter, JJ., concur; Prentice, J., concurs in result; DeBruler, J., dissents with opinion.

## DISSENTING OPINION

DEBRULER, J.—I dissent from the majority opinion because the State has not met its burden of showing probable cause to believe a suspect was engaged in some type of illegal activity before it initiated its scheme to trap him.

The practice of the police initiating criminal activity in order to apprehend unwary criminals is a drastic one and the Supreme Court of this State has developed limitations on its use in order to safeguard against its abuse. It has been clearly held by this Court that before the police may initiate a scheme to trap a suspect they must first have probable cause to believe he has been involved in illegal activity.

> "When appellant evoked the defense of entrapment he imposed upon the state the requirement of proving that it had probable cause of suspecting that the appellant had engaged in illegal conduct." *Smith* v. *State* (1972), 30 Ind. Dec. 489, at 492, quoting *Walker* v. *State* (1970), 255 Ind. 65, 262 N. E. 2d 641, at 645.

Moreover when probable cause for "baiting the trap" is absent "the work product of the scheme cannot be utilized. . . ." *Smith* v. *State, supra, at* 493. I do not believe that the facts in the case at bar demonstrate sufficient probable cause for agent Chmelik to have initiated such a scheme and since the plan was improper from its inception its "work product" cannot be utilized.

The only indication that agent Chmelik had of any illegal activity in this case was the statement of an informer that he could introduce Chmelik to one Robert Nau who has mescaline available for sale. There was no showing that Chmelik inquired into the foundation for this conclusion or knew of any facts which would substantiate the informer's claim. With only this information in mind agent Chmelik contacted Nau and asked him to sell him some mescaline.

This conclusory hearsay statement from an untried informer is not sufficient probable cause by which the police would be able to initiate a scheme to trap a suspect. Although hearsay may be used as a basis for probable cause it has long been held that there must be some underlying facts or surrounding circumstances to substantiate such a conclusory statement. *Kinnard* v. *State* (1968), 251 Ind. 506, 242 N. E. 2d 500. The record here is barren of any such facts or circumstances.

The majority misapplies the case of *Walker* v. *State, supra,* to the facts in this case. The informer's information given to agent Chmelik in the case at bar may well have provided sufficient grounds for the police to pursue these leads further through normal investigative procedures, but as pointed out above, it did not constitute sufficient probable cause to enable the police to initiate unlawful activity in order to catch the suspect.

The principle laid down in *Walker* v. *State, supra,* at 645, is as follows:

> "We hold that it is not necessary for the officers to have had all the information leading to probable cause prior to the beginning of the information. It is sufficient if during the investigation but before the transaction which is alleged to be entrapment the officers acquire the information which supplies probable cause."

The record here indicates that the transaction which is alleged to be entrapment was initiated without further investigation into the informer's conclusory accusations. The scheme was implemented when the agent contacted Nau and

offered to purchase mescaline from him. This is not a situation where police investigation reaches the point of probable cause and a scheme to trap a suspect is then initiated but is rather a case where the police immediately initiated a scheme without investigation and without sufficient substantial information for probable cause.

I further disagree with the majority "third party" rule which nullifies the defense of entrapment when a non-governmental intermediary leads the agents to a suspect. Justice Frankfurter in his concurring opinion in *Sherman* v. *U.S.* (1958), 356 U.S. 369, 78 S. Ct. 819, 2 L. Ed. 2d 848, stated that:

> "The court refused to convict an entrapped defendant, not because his conduct falls outside the prescription of the statute, but because, even his guilt be admitted the methods employed on behalf of the government to bring about conviction cannot be contenanced." 356 U.S. at 380.

The third party rule adopted by the majority today makes the methods employed on behalf of the government irrelevant in its application and removes the defense of entrapment in the third party situation regardless of the surrounding circumstances. The majority rule would ignore such important considerations as the amount of police pressure placed upon the intermediary to approach the third party or, more significantly, the amount and type of inducement or persuasion used by the intermediary on the third party to commit a criminal act.

It should be remembered that, even in the third party situation, we continue to be concerned with the very serious area of government initiated crime. The fact that there appears in the overall scheme a non-governmental intermediary, untrained and unconcerned with the rights of individuals, should increase our concern with his methods rather than abolish it.

NOTE.—Reported in 290 N. E. 2d 724.