ROBERT LOCKLAYER *v.* STATE OF INDIANA.

[No. 1-1173A205. Filed October 30, 1974.]

William B. Ream, of Bloomington, for appellant.

Theodore L. Sendak, Attorney General, Robert E. Dwyer, Deputy Attorney General, for appellee.

LYBROOK, J.—Defendant-appellant Locklayer was tried by jury and convicted of possession of narcotic drugs, sale of narcotic drugs, and possession of a device used in smoking a dangerous drug. His appeal presents three issues for review:

(1) Whether the trial court erred in overruling his Motion to Suppress.

(2) Whether there was a break in the chain of custody of certain items admitted into evidence.

(3) Whether the jury verdict was supported by sufficient evidence.

The evidence most favorable to the State reveals that on February 4, 1972, James Michael Brown was arrested by the Bloomington Police on charges arising from an alleged forgery. In the course of the interrogations that followed his arrest, Brown was persuaded to assist in several controlled drug purchases from suspected drug traffickers. Appellant was included among those suspected.

At the direction of the police, Brown telephoned Locklayer to ascertain if he had heroin for sale. However, the record does not reveal Locklayer's response. Before going to Locklayer's residence, Brown, accompanied by several police officers, attempted to make a controlled drug purchase from one Hardin Lanier, another suspected drug trafficker. According to Brown, this attempt was unsuccessful because Lanier was aware of Brown's arrest and suspected the trap. Lanier sug-

gested that Brown attempt to make his purchase from Joe Williams.

Proceeding to Williams' apartment, Brown successfully completed a controlled purchase of heroin, which resulted in the issuance of a search warrant and ultimately, the arrest of at least two persons on drug related charges.

After completing the Williams' transaction, Brown submitted to a thorough search by the police, and was given a marked twenty dollar bill to use in the drug purchase from Locklayer. At appellant's apartment Brown purchased a quantity of drugs from Locklayer. The sale was consummated without incident, but due to Locklayer's apprehension of being "busted" Brown was required to inject the drug before leaving the apartment.

Upon exiting Locklayer's apartment, Brown was immediately returned to the police station and once again subjected to a thorough search which revealed fresh needle marks on his arm and a folded piece of tin foil containing a powdery residue. The fruits of this search, together with statements made by Brown concerning the transaction with Locklayer formed the basis of an affidavit for a search warrant filed by the State in the early morning hours of February 5, 1972. After determining that probable cause existed, the trial judge issued a search warrant for Locklayer's apartment. Subsequent to the execution of this warrant, the State filed three affidavits charging Locklayer with (1) possession of narcotic drugs, (2) sale of narcotic drugs, and (3) possession of a device used in smoking a dangerous drug. From a judgment entered on the jury verdicts of guilty on all three charges, Locklayer appeals.

## ISSUE 1.

Initially Locklayer contends that the trial court erred in overruling his motion to suppress. He maintains that the motion should have been sustained because (1) he was a

victim of entrapment and (2) Brown was not a reliable informant under the guidelines of *Aguilar* v. *Texas* (1964), 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723.

In his motion Locklayer requested suppression of all evidence which the State had indicated it would present because "The alleged evidence was the product of the entrapment of the defendant." Follow a lengthy debate at the evidentiary hearing on the motion, the trial judge denied Locklayer's request. For reasons stated, such denial was proper.

At the hearing the State contended that it was improper for Locklayer to argue the defense of entrapment at that stage of the proceeding since entrapment is a factual issue to be resolved by the jury and as such not a proper ground for a motion to suppress. Although the State did not brief this point on appeal, we believe it necessary to resolve the question of the propriety of arguing entrapment in a pretrial motion to suppress.

An examination of Indiana authorities on entrapment fails to disclose any case wherein this issue has been squarely presented. The pertinent authorities do however, uniformly hold that entrapment is a defense which goes to the merits of the charge against the defendant and as such, is a factual issue to be resolved by the jury. *Thompson* v. *State* (1972), 259 Ind. 587, 290 N.E.2d 724; *Hauk* v. *State* (1974), 160 Ind. App. 390, 312 N.E.2d 92. See also, *Smith* v. *State* (1972), 258 Ind. 415, 281 N.E.2d 803; *Walker* v. *State* (1970), 255 Ind. 65, 262 N.E.2d 641; and *Gray* v. *State* (1967), 249 Ind. 629, 231 N.E.2d 793. Since entrapment is a complete defense to the merits of the charges we are unable to discern in what manner, if any, it presents a question of admissibility of evidence. The more logical conclusion is that rather than presenting a question of admissibility of evidence, entrapment presents the proposition that *regardless of the evidence,* a conviction may not be obtained if the act or acts complained of were improperly instigated by the authorities. A like conclusion was reached by the

Colorado Supreme Court when the question confronting us in the case at bar was squarely presented in *People* v. *Patterson* (1971), 485 P.2d 494. Therein the court faced an appeal from a lower court ruling that quashed a motion to suppress on the grounds that entrapment was not a proper ground for such a motion. In affirming the lower court's action, the *Patterson* court declared that defendant's claim that the evidence sought to be suppressed was seized from him by entrapment went to the merits of the charge against him rather than to the admissibility of the evidence. The court reasoned as follows:

"The law is clear that entrapment is a defense which goes to the merits of the charge against a defendant. Gonzales v. People, 168 Colo. 545, 452 P.2d 46; Sorrells v. United States, 287 U.S. 435, 53 S.Ct. 210, 77 L.Ed. 413. *Entrapment does not present a question of admissibility of evidence, but presents rather the proposition that a conviction may not be obtained, no matter what the evidence, where the authorities instigated the acts complained of,* and this is generally a question of fact for a jury." (Emphasis added.)

In light of the foregoing discussion, we are compelled to the conclusion that the substantive issue of the defense of entrapment is a factual matter to be resolved by the jury and is not an appropriate ground for a motion to suppress. To sanction a pre-trial adjudication of the issue of entrapment would amount to an unwarranted and an unnecessary usurpation of the fact-finding function of the jury.

However, closely related to the defense of entrapment, yet clearly distinguishable is an additional rule of probable cause applied by our courts for the protection of the defendant. Under this rule, once the defendant has raised the defense of entrapment it is incumbent upon the State to present evidence establishing that before the transaction alleged to be entrapment was initiated, the State had probable cause for suspecting that defendant was engaged in illegal conduct. *Walker* v. *State, supra; Smith* v.

*State, supra.* Although the Federal cases from which the Indiana probable cause requirement was adopted held that the probable cause question was a factual issue for the jury and as such merely one factor which would rebut the defense of entrapment,[1] from the onset Indiana has approached the probable cause rule as an absolute rule separate and distinct from the entrapment issue and has declared it to be a matter of law for the court's determination.[2] Additionally, failure to establish probable cause for suspecting the defendant precludes the State from utilizing the work product of the scheme:

> "In the case at bar, even should we differ in our opinions as to whether the offense was conceived and enticed by the agent, there can be no doubt that no evidence was presented to render the defendant suspect of any offense prior to the time the State's scheme was set into motion. *Probable cause for 'baiting the trap' was therefore absent, and the work product of the scheme cannot be utilized,* thereby condoning and encouraging that which was illegal in the first instance." (Emphasis added). *Smith* v. *State, supra,* 281 N.E.2d at 806.

Since the probable cause rule arising in an entrapment case is a question of law for the court and since absent probable

---

1. See *Heath* v. *United States* (10th Cir. 1948), 169 F. 2d 1007.

2. In commenting upon the evidence introduced by the State to establish probable cause for suspecting that defendant was engaged in illegal trafficking of drugs, the court in *Walker* v. *State, supra,* stated that since the defendant had invoked the defense of entrapment, "it was not only proper but incumbent upon the State to produce this evidence *before the court for the court's determination* as to whether or not the officers had probable cause . . . ." (Emphasis added). 255 Ind. at 72. See also, Justice Jackson's dissenting opinion in *Walker* v. *State, supra,* wherein he states: ". . . the prosecution may submit hearsay evidence for the limited purpose of showing probable cause for investigating the accused. See, *Walker* v. *United States, supra; Whiting* v. *United States,* 321 F. 2d 72; *Whiting* v. *United States* (1 Cir. 1961), 296 F. 2d 512; *Washington* v. *United States* (5 Cir. 1960), 275 F. 2d 687; *Heath* v. *United States, supra; United States* v. *Siegel* (8 Cir. 1926), 16 F. 2d 134. However, due to the highly prejudicial character of the evidence, and even though it is not offered to prove the guilt of the defendant, this evidence must be received outside the presence of the jury and the determination of the existence of probable cause made by the trial judge. This procedure is clearly permissible since probable cause is more a question of law than a question of fact, and it has always been within the province of the trial court to rule on questions of law."

cause for "baiting the trap" the State is precluded from utilizing the evidence obtained, it is evident that the probable cause rule arising in an entrapment case is closely analogous to the probable cause requirements in cases dealing with search warrants, arrest warrants, and warrantless searches and arrests.[3]

Therefore, it is apparent that although the defense of entrapment does not present a question of admissibility of evidence, the related rule of probable cause does. Accordingly, the probable cause rule may be either resolved in a pre-trial motion to suppress, or raised at trial as grounds for challenging the admissibility of evidence obtained through a scheme alleged to be entrapment. If argued at trial it is imperative that the evidence be received outside the presence of the jury and the issue resolved by the trial judge.

In the case at bar, at the conclusion of the evidentiary hearing on the motion to suppress, the trial judge declared that as a matter of law ". . . there were facts and a knowledge in possession of the Police Department which permitted them to set up a controlled buy in this case, and that if there is an issue of entrapment, it is an issue for the jury."

Thus, the trial judge found, as a matter of law, that there was probable cause for suspecting that defendant was engaged in illegal activities. Further, the trial judge reserved the issue of entrapment for the jury. In light of the foregoing discussion, we find the ruling proper.

An examination of the testimony at the hearing on the motion to suppress reveals that the police suspicions of Locklayer were founded on various informants' tips and prior admissions of Locklayer to members of the Police De-

---

3. The main distinction between the probable cause rule arising in an entrapment case and the probable cause requirement in search and arrest cases is the level of evidence necessary to show probable cause. All that is necessary in an entrapment case is evidence that shows *probable cause for suspecting* the defendant; while a higher standard is required in the search and arrest cases. *Smith* v. *State, supra; Hauk* v. *State, supra.*

partment concerning his drug related habits and practices. The evidence was sufficient to support the trial court's finding of probable cause for suspecting Locklayer. Accordingly, we find no error in the trial court's denial of Locklayer's motion to suppress on the question of entrapment.

Secondly, Locklayer submits that his motion should have been granted because the reliability of Brown was never established. He argues that the affidavit for the search warrant was insufficient to establish Brown's reliability under the guidelines of *Aguilar* v. *Texas, supra,* and IC 1971, 35-1-6-2, Ind. Ann. Stat. § 9-602 (Burns Supp. 1974).

*Aguilar* requires that an affidavit for a search warrant based on hearsay information contain statements that sufficiently inform the magistrate of some of the underlying circumstances on which the informant based his conclusions and the circumstances from which the affiant concluded that the informant was credible or his information reliable. The present affidavit reveals that the informant (Brown) based his conclusions on first hand knowledge arising from an actual drug purchase from Locklayer. It further reveals that affiant based his conclusion of Brown's reliability and credibility on at least three prior occasions involving Brown as an informant. The affidavit sets forth sufficient underlying circumstances to support a finding of probable cause under *Aguilar*.

Locklayer next contends that the affidavit fails to meet the specified standards for credible hearsay as prescribed in IC 1971, 35-1-6-2, *supra,* in that it does not contain "affirmative allegations that the credible person spoke with personal knowledge of the matters contained therein." We note however, that Locklayer's motion to suppress did not include this argument as a reason why the evidence should have been suppressed. Further, Locklayer did not present this argument at the hearing on the motion, nor did he object to the introduction of the evidence at trial on these grounds. Rather, Locklayer first presents this argument in his motion to correct

errors. He has therefore waived his right to question the statutory sufficiency of the affidavit for the search warrant.

## ISSUE 2.

Appellant contends that it was error to admit into evidence over his objections certain items seized from his apartment by the officers executing the search warrant. He maintains that there was a break in the chain of custody of these items since they were not listed as items seized on the receipt given his girl friend by the officers.

The record reveals that at the time of the search, appellant's girl friend was given a written receipt signed by a member of the Bloomington Police Department listing the items seized pursuant to the execution of the search warrant. At trial, however, several items not listed on the receipt were admitted into evidence as being seized from appellant's apartment.

Locklayer submits that since the items were not listed on the receipt, there was an interruption in the chain of custody in that no foundation could be laid connecting the defendant with the evidence in question. We do not agree.

Without question, a foundation must be laid connecting the evidence with the defendant before it is admissible at trial. *Graham* v. *State* (1970), 253 Ind. 525, 255 N.E.2d 652. However, we know of no rule, nor has appellant directed our attention to any authority supporting the proposition that failure to list an evidentiary item on a written receipt precludes the State from establishing a foundation which links the defendant with the evidence. While a written receipt might in an appropriate case serve as *prima facie* evidence that the items sought to be admitted are connected in some manner with defendant, it is not necessary that the link between the defendant and the evidence be established in that manner. As the court in *Graham* v. *State, supra,* stated, the State may establish the " 'chain of evidence' by either producing police custody records showing the same or by testimony of witnesses."

In the case at bar, appellee's witnesses testified that the evidence in question, although not listed in the receipt, was seized from appellant's apartment. Under the guidelines of *Graham, supra,* this testimony is sufficient to establish a foundation connecting the defendant with the evidence. It therefore cannot be said that there was a break in the chain of custody for the reasons advanced by appellant. Accordingly, we find no error under this issue.

## ISSUE 3.

Finally, appellant challenges the jury verdict on the sale of narcotic drug charge as not being supported by sufficient evidence. Specifically, Locklayer maintains that the State failed to present sufficient evidence to prove the identity of the substance he sold to Brown. He argues that "There is not one shred of evidence that what the defendant sold to James Michael Brown was heroin."

In considering a question as to the sufficiency of the evidence, this court has repeatedly stated that it will not weigh the evidence nor consider questions of credibility of witnesses. Rather, we will look only to that evidence most favorable to the appellee, together with all reasonable inferences to be drawn therefrom. If from that viewpoint there is substantial evidence of probative value that establishes each element of the criminal offense beyond a reasonable doubt, the verdict will not be disturbed. *McGowan v. State* (1973), 156 Ind. App. 344, 296 N.E.2d 667; *Hood v. State* (1974), 160 Ind. App. 667, 313 N.E.2d 546; *Nicholas v. State* (1973), 261 Ind. 115, 300 N.E.2d 656.

Due to Locklayer's insistence that Brown inject the drug before leaving his apartment, there was not enough residue on the tin foil to conduct a chemical analysis of the powdery substance.

Thus, we are faced with a situation wherein the identity of an alleged contraband substance was not established by

expert testimony based upon chemical analysis. In such instances, the State may prove the identity of the substance by circumstantial evidence. *Slettvet* v. *State* (1972), 258 Ind. 312, 280 N.E.2d 806; *Pettit* v. *State* (1972), 258 Ind. 409, 281 N.E.2d 807. However, to be sufficient, the circumstantial evidence must consist of opinion testimony of someone sufficiently experienced with the drug indicating the identity of the substance. *Slettvet* v. *State, supra.* Further, by reason of his past experience with drugs, a narcotics addict may be properly qualified to render an opinion that the substance he injected into his body contained a narcotic drug with which he has demonstrated familiarity. *Pettit* v. *State, supra.* Thus, in the case at bar opinion testimony from Brown, an admitted narcotics addict, would have been sufficient to establish the identity of the substance he purchased and injected. However, the State failed to elicit such opinion testimony from Brown, and further failed to present any other substantial evidence of probative value as to the identity of the substance sold. It therefore cannot be said that there was sufficient evidence before the jury to permit a finding that the substance sold was heroin. Since the State did not prove the nature of the substance sold by appellant it failed to prove an essential element of the crime. See *Slettvet, supra.* Appellant's conviction on the sale of narcotic drugs charge must therefore be set aside.

There being no reversible error demonstrated on the convictions of possession of narcotic drugs and possession of device used in smoking a dangerous drug, they are hereby affirmed.

Affirmed in part, reversed in part.

Robertson, P.J. and Lowdermilk, J., concur.

NOTE.—Reported at 317 N.E.2d 868.