ANDREW JEROME SHIPP *v.* STATE OF INDIANA.

[No. 875S186. Filed July 20, 1976.]

*James P. Dunn,* of Fort Wayne, for appellant.

*Theodore L. Sendak,* Attorney General, *Robert F. Colker,* Assistant Attorney General, for appellee.

DeBruler, J.—Appellant, Andrew Jerome Shipp, appeals from a conviction for delivery of heroin, Ind. Code § 35-24.1-4-2, Burns § 10-3561(a) (1) (i), for which he was sentenced to eighteen years imprisonment and a $900.00 fine.

The facts of the case were that an undercover policeman, Silva, and an informant, Patterson, determined on a plan to have appellant sell Silva narcotics. The federal police informed Silva that they had made a buy of narcotics from appellant. Silva strip-searched Patterson and ascertained that he possessed no money or narcotics. The two then located appellant's car and stopped near a tavern. Silva stayed in the car while Patterson entered the tavern and returned within two minutes accompanied by appellant. Patterson and appellant sat in the front seat of the car, while Silva, the narcotics officer, remained in the back seat. It was winter and eight o'clock at night and, therefore, dark outside.

While the three were so situated in the car, Patterson told Silva that appellant had seven packets of heroin which he would sell for $105.00. Silva replied that he had only $50.00. Patterson then said that he could buy three packets for $50.00, and appellant nodded his head. Silva, who testified at trial, described appellant's behavior at this point in the conversation as follows:

> "Well, when I said that I'd buy three bags, the—ah— Mr. Shipp acknowledged by nodding his head. He would.
>
> Q. So he acknowledged that he would sell three bags?
> A. Yes.
> Q. So did you have any direct conversation with the defendant, Andrew Shipp?
> A. No, sir, not directly."

Patterson gave Silva the three packets, and Silva gave *appellant* $50.00. Appellant then left the car. Patterson gave Silva a fourth packet which he said appellant had given him. When Patterson was again strip-searched, he had no other narcotics.

At the heart of this case is appellant's contention that the evidence of delivery and of the absence of entrapment was insufficient to permit the jury to find these elments proved beyond a reasonable doubt. The statute defines delivery in the following manner:

" '[D]elivery' means the actual, construction, or attempted transfer from one person to another of a controlled substance, whether or not there is an agency relationship."

Faced with such a challenge to the sufficiency of the evidence, we do not weigh the evidence but look to that evidence and the reasonable inferences therefrom most favorable to the State. The conviction will be affirmed if, from that viewpoint, there is evidence of probative value from which a reasonable trier of fact could infer that appellant was guilty beyond a reasonable doubt. *Glover* v. *State,* (1970) 253 Ind. 536, 255 N.E.2d 657; *Patterson* v. *State,* (1970) 255 Ind. 22, 262 N.E.2d 520.

Viewed in this manner, the evidence shows that Patterson, the informant, did not have the drugs on his person when he left Officer Silva in the taxicab and entered the tavern. Moments later he emerged in the company of appellant, got in the front seat of the car, and handed the three bags of heroin over to Officer Silva. At that time, as evidenced by the fact that appellant accompanied Patterson, nodded his approval to the terms of the sale, and took the money from Silva and left, appellant had an interest in and a direct control over the drugs in Patterson's actual possession. Silva, without objection, was permitted to testify that Patterson, in the presence of appellant, stated that the heroin in his possession belonged to appellant. And, after appellant left the car with the money, Patterson was left in possession of the single fourth bag of heroin. This fact, together with the fact that Patterson had provided consideration for it in the form of assistance to appellant, further supports the inference that the heroin belonged to appellant.

In addition to proving that the heroin in the actual custody of Patterson belonged to appellant, the evidence, although circumstantial, establishes a delivery. Patterson, who had been strip-searched, entered a tavern, open to the public, and there came in contact with appellant. The two communicated, and, within two minutes, appellant agreed to accompany

Patterson to a point outside the tavern. Once they were in the car, Patterson had the narcotics. The transfer would have occurred, while Patterson was in the company of appellant either in or outside the tavern. Appellant exercised control over the drugs in Patterson's physical custody outside the tavern, and it is a reasonable inference that he exercised such control while the two were inside the tavern. By this chain of evidence, the single links of which have practically the same evidentiary weight, we conclude that the trier of fact was presented with sufficient evidence that appellant delivered heroin to Patterson.

Appellant, in presenting his contention that the evidence of no entrapment was insufficient, accepts, for the purpose of this appeal, that there would be sufficient evidence if the State affirmatively showed that he was not innocently lured and enticed to deliver the heroin to Patterson. *Gray* v. *State,* (1968) 249 Ind. 629, 231 N.E.2d 793. Consequently, appellant does not challenge the sufficiency of the evidence to support the judge's determination that the police had probable cause to instigate the entrapment plan. Accepting the sufficiency argument in this posture and having examined the evidence presented to the jury, we conclude that, although the evidence is circumstantial, it is sufficient to withstand appellant's challenge on appeal. From the evidence presented, the jury would have been justified in believing that appellant was in a public tavern in control of four bags of contraband heroin. It took him less than two minutes to place these bags in the physical custody of Patterson for the purposes of selling them. Here, there was no time for Patterson to have overcome any reluctance on the part of appellant to turn over the drugs. The pieces of evidence, when fitted together, sufficiently support the jury's determination that appellant was not innocently lured and enticed to deliver the drugs to Patterson, but instead was ready and willing to do so if and when the opportunity presented itself.

Appellant contends that the trial court erred in denying his motion for a directed verdict at the end of the State's case.

The motion was based upon the claim that the State had failed to present sufficient evidence of delivery and no entrapment. The evidence, stated and considered in the preceding sections of this opinion dealing with the sufficiency of evidence, was given during the State's case-in-chief and established those elements prima facie. Therefore the court correctly denied this motion.

Appellant contends that the trial court erred in failing to submit the issue of entrapment to the jury. To make this claim tenable, appellant points out that the trial court held a hearing on entrapment outside the presence of the jury, gave no instruction to the jury on entrapment, and refused to give an instruction on entrapment tendered by appellant.

The defense of entrapment was raised for the first time in this case by the opening statements of defense counsel to the jury. The trial court immediately took a recess and held a hearing outside the presence of the jury. Officer Silva testified at this hearing that federal authorities had provided him with probable cause to initiate the plan to make a buy from appellant and fully described the execution of that plan. At the conclusion of that hearing, the trial court made the following determination:

"All right, let the record show that the Court has determined that there was indeed probable cause for suspecting or believing that the defendant was engaged in illegal conduct prior to the events with which he is charged with at this time."

The jury was then brought back into the courtroom and the trial resumed.

During the trial, Silva again testified and fully described the planning and execution stages of the covert operation to make a buy from appellant. At the conclusion of the evidence, appellant tendered a jury instruction on entrapment which the trial court refused. Thereafter, as reflected in the record before us, the court gave State's instruction number 2, by agreement of the parties, and without objection. This instruction did define the defense of entrapment. We are led by

the record before us to the conclusion that the issue was indeed submitted to the jury for its consideration, by the evidence presented to it and by State's instruction number 2.

Appellant acknowledges in his reply brief that State's instruction number 2 was in fact given by the court, but asserts that such instruction was not adequate. No specific aspect of the instruction is identified as being inadequate, and such a broad, general claim, coming for the first time in a reply brief on appeal, is too late. Ind. R. Tr. P. 51. And, since instruction number 2 was given by agreement, its content and language was adopted by appellant as his own.

Appellant's arguments presented here do not focus upon a very closely related issue, namely, whether the judge or the jury is the proper arbiter to decide whether probable cause to initiate an entrapment plan exists. That issue received extensive consideration recently by Judge Lybrook of the First District Court of Appeals in *Locklayer* v. *State*, (1974) 162 Ind. App. 64, 317 N.E.2d 868. Here, appellant does not distinguish between the probable cause and the substantive aspects of the defense of entrapment and, consequently, does not argue the relative merits of these two entities as arbiters of entrapment probable cause. In light of this posture of the argument and because the case before us can justly be decided on appeal without reaching that issue, we choose to leave that issue for another day.

Appellant next claims that the trial court committed reversible error in granting the State a continuance of the trial. Prior to seeking this continuance, the State had successfully obtained an order to have the informant Patterson transported to the trial court from the state prison where he was serving a sentence, for trial purposes. The motion for continuance disclosed under oath that, through some error, the trial court had ordered the defendant, rather than the witness, returned. Even if we assume that the name of the informant had not been endorsed on the information, the trial court had authority to grant the

motion. *Gregory* v. *State,* (1972) 259 Ind. 295, 286 N.E.2d 666. Appellant made no objection to the requested continuance in the trial court, and, on appeal, he does not assert that the grant of a continuance in any manner hindered his ability to defend.

Appellant next contends that he was unfairly surprised when the State did not call the informant Patterson to the witness stand. Appellant had several legal procedures available to him to avoid any detriment to his defense from this surprise move by the State. He might have sought a continuance of the trial for the purposes of mapping a new defense strategy. Ind. R. Tr. P. 53.4. Moreover, the testimony heard by appellant on the day of trial alerted him to the fact that the informant was actually present at the time in the county jail at the site of the trial. Appellant could have asked for an order from the court to compel the witness to appeal and testify on behalf of the defense. As no step was taken to have avoided any surprise to the defense, the dimension of the disruption to the defense flowing therefrom was consonant with a fair trial.

Appellant also claims that the State's not calling Patterson as a witness also denied him his right to meet the witnesses against him face to face, as guaranteed by Art. 1, § 13, Indiana Constitution. The failure of the State to call a competent witness does not deny a defendant his constitutional right. *Walker* v. *State,* (1970) 255 Ind. 65, 262 N.E.2d 641. Appellant knew the name and residence of this witness six weeks before the trial and could have requested an order from the trial court compelling this witness to appear and testify. *Allbritten* v. *State,* (1974) 262 Ind. 452, 317 N.E.2d 854; *Denton* v. *State,* (1964) 246 Ind. 155, 203 N.E. 2d 539. Moreover, as we have noted, in the hearing on the first morning of trial, appellant learned that the witness was lodged in the county jail at the site of the trial. The avenue was therefore open for appellant to have procured his presence as a witness, even after he discovered that the State would not call him. This case is unlike *Dorsey* v. *State,* (1970) 254

Ind. 409, 260 N.E.2d 800, wherein reversal was warranted when the prosecution secreted a State's witness in purposeful disregard of a direct court order to present such witness for timely discovery.

In the course of appellant's argument that he was denied the right to meet the witnesses against him face to face in violation of Art. 1, § 13, of the Indiana Constitution, he quotes Art. 1, § 18, of the Indiana Constitution and asserts that the case before the Court is one of vindictive justice. Appellant appears to argue that his conviction and punishment upon the testimony of Officer Silva, uncorroborated by the testimony of Patterson, is vindictive on the part of the State. Appellant cites no authority, and we are unpersuaded by appellant's terse conclusory statements on this subject to the effect that this constitutional provision was intended to guard against conviction upon the uncorroborated testimony of a single prosecution witness.

The judgment of the trial court is affirmed.

Givan, C. J., Arterburn, Hunter and Prentice, JJ., concur.

NOTE.—Reported at 350 N.E.2d 619.