**Ernest CLARK, Appellant–Defendant,**

**v.**

**STATE of Indiana, Appellee.**

**No. 49A02–9908–CR–551.**

Court of Appeals of Indiana.

Aug. 4, 2000.

---

Steven B. Lazinsky, Marion County Public Defender, Indianapolis, Indiana, Attorney for Appellant.

Jeffrey A. Modisett, Attorney General of Indiana, Randi E. Froug, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

**OPINION**

SULLIVAN, Judge

Appellant, Ernest Clark (Clark), appeals his convictions for three counts of attempted arson. Specifically, Clark was convicted of Attempted Arson, a Class B felony,[1] Attempted Arson for Hire, a Class B felony,[2] and Attempted Arson with the Intent to Defraud an Insurance Company, a Class C felony.[3]

We affirm in part and reverse in part.

Upon appeal, Clark presents the following issues for review:

(1) Whether the trial court erred in convicting and sentencing Clark upon three separate counts of attempted arson when they arose from a single incident;

(2) Whether the jury instructions failed to set forth the essential elements of attempted arson and misled the jury; and

(3) Whether the jury instruction given upon accomplice liability was erroneous because it failed to specify the conduct of Clark which made him an accomplice.

The relevant facts reveal that in June of 1997, Clark began spending time with a friend's teenage son, Jeremy Brooks (Brooks). Brooks eventually started living at Clark's residence. The living conditions of Clark's residence were extremely poor, and after an investigation which was conducted upon receiving complaints from neighbors, the Marion County Health Department ordered Clark to vacate the premises and clean the home.

Clark told Brooks and Brooks' mother that if he could not clean the home, he would burn it down. Clark reasoned that it may be a better option to burn the house down, and he told Brooks' mother that he would pay someone $1,000 if he or she would burn the house down. Clark also told her that he would pay this person more when he received the insurance proceeds. Clark and Brooks also spoke about plans to buy a new home after Clark received the insurance proceeds from the fire of his current residence. Clark approached others about burning his house down, recruiting them by telling them that he would pay them from the insurance proceeds he would receive.

On October 7, 1997, Clark offered Brooks a portion of the insurance proceeds, and told Brooks that he would pay $1,000 to anyone else who assisted in the burning. Clark told Brooks to take care of the house, which Brooks interpreted as a request to burn it. Brooks then recruited Robert Hinman (Hinman) and Matt Pumphrey (Pumphrey) to assist him in burning Clark's residence. They planned

---

1. I.C. 35–43–1–1(a) (Burns Code Ed. Repl. 1998) and I.C. 35–41–5–1 (Burns Code Ed. Repl.1998). For current provision, *see* I.C. 35–43–1–1 (Burns Code Supp.1999).

2. I.C. 35–43–1–1(b) (Burns Code Ed. Repl. 1998) and I.C. 35–41–5–1 (Burns Code Ed. Repl.1998).

3. I.C. 35–43–1–1(c) (Burns Code Ed. Repl. 1998) and I.C. 35–41–5–1 (Burns Code Ed. Repl.1998).

to pour gasoline throughout the house, and then throw a Molotov cocktail through the window to ignite the fire.

On the same day, Brooks visited Clark and asked him for gas money. After Clark gave him the money, Brooks, Hinman, and Pumphrey obtained a gasoline can and filled it with gasoline. Using Brooks' key, the three entered, and Brooks removed some electronic equipment from Clark's residence. Brooks poured gasoline in a portion of the house, and Pumphrey spread it through the rest of the house. Then, Hinman heard a clicking sound as if the water heater was ready to ignite. The three fled Clark's home as it exploded behind them. They asked neighbors to call 911. They walked to a convenience store to call Clark who arrived as the three were being questioned about the incident. Clark grabbed Brooks and told him to be quiet.

The day after the fire, Clark submitted an insurance claim to State Farm Insurance Company. The insurance company determined that Clark had caused the loss and denied the claim. The police also concluded that the fire had been intentionally set. On December 30, 1998, Clark was charged with three counts of attempted arson. On May 11, 1999, after a jury trial, Clark was convicted upon all three counts and sentenced to ten years for each Class B felony and four years for the Class C felony. The sentences were to be served concurrently.

## I.

 Upon appeal, Clark asserts that his convictions for three counts of attempted arson violate the Double Jeopardy Clause of the Indiana Constitution. Article 1, Section 14 states that "[n]o person shall be put in jeopardy twice for the same offense." Recently, our Supreme Court revisited Indiana's double jeopardy clause and carved out a test independent of the federal standard.[4] In *Richardson v. State* (1999) Ind., 717 N.E.2d 32, 49, the Court concluded:

> "two or more offenses are the 'same offense' in violation of Article I, Section 14 of the Indiana Constitution, if, with respect to *either* the statutory elements of the challenged crimes *or* the actual evidence used to convict, the essential elements of one challenged offense also establish the essential elements of another challenged offense." (emphasis in original).[5]

**4.** *Blockburger v. United States* (1932) 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306, bases the double jeopardy analysis upon the Fifth Amendment to the U.S. Constitution. *Blockburger* states that "where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not." *Id.* at 304. However, Clark restricts his challenge to Indiana's double jeopardy clause, and therefore we will not apply the limited federal standard in our analysis.

**5.** In addition to the traditional "same statutory elements" test represented by the *Blockburger* analysis, and the newly enunciated "same evidence" test set forth in *Richardson v. State, supra,* double jeopardy considerations preclude multiple convictions where crime A is charged in such a manner as to include crime B. *Buie v. State* (1994) Ind., 633 N.E.2d 250;

*Moore v. State* (1998) Ind.App., 698 N.E.2d 1203, *trans. denied; Stringer v. State* (1998) Ind.App., 690 N.E.2d 788, *trans. denied.*

Double jeopardy prohibitions would not be implicated if a charge of arson were joined with a charge of conspiracy to commit arson where the overt act constituting a necessary element of the conspiracy was alleged to be the purchase and transport of gasoline to the scene. On the other hand, the third prong of a comprehensive double jeopardy analysis would preclude multiple convictions where the arson charge is joined with a conspiracy charge alleging the arson itself as the overt act.

It is probable that the "actual evidence" test articulated in *Richardson* was intended to subsume what we previously considered as a double jeopardy prohibition analyzing the "same offense" issue in terms of viewing the crimes "as charged." Justice Dickson's lead opinion in *Richardson* rejected the "manner in which the offenses are charged" analysis as too narrow. 717 N.E.2d at 53–54. In his

■ Under the statutory elements test, the essential elements of the challenged offenses are compared, and "[e]ach offense must contain at least one element which is separate and distinct from the other offense so that the same evidence is not necessary to convict for both offenses." *Id.* at 52. Even if no violation of double jeopardy is discovered upon this comparison, a violation might still exist if the actual evidence presented at trial demonstrates that each offense was not established by separate and distinct facts. The "defendant must demonstrate a reasonable possibility that the evidentiary facts used by the fact-finder to establish the essential elements of one offense may also have been used to establish the essential elements of a second challenged offense." *Id.* at 53.

■ In the instant case, Clark was charged and convicted of three counts of attempted arson, with the second and third count stemming from arson for hire and arson with the intent to defraud. These three convictions arose from a single act of burning Clark's residence. Clark offered to pay Brooks and anyone else Brooks could find to help burn Clark's residence. Brooks and two of his recruits poured gasoline in Clark's home, but before they could throw the Molotov cocktail, the water heater caused the house to explode. All three offenses arose from this set of events.

Even without using the Supreme Court's constitutional analysis from *Richardson,* we conclude that two of Clark's three convictions for attempted arson are invalid. Before *Richardson,* as indicated by Justice Boehm's separate opinions in that case and its companion cases, multiple convictions like the ones in the present case were barred by statutory and common law rather than upon constitutional grounds. Justice Boehm relied upon the common law rule announced in *Thompson v. State* (1972) 259 Ind. 587, 290 N.E.2d 724, 727, which "requires convictions to be supported by facts that were 'independently supportable, separate and distinct.'" *Griffin v. State* (1999) Ind., 717 N.E.2d 73, 90. *See also Chavez v. State* (2000) Ind. App., 722 N.E.2d 885, 893 n. 12, *reh'g denied* (holding under *Richardson* that the multiple convictions violated double jeopardy, but recognizing that the case could have been resolved in the absence of *Richardson* based upon existing common law requiring that convictions be supported by independent and distinct facts).

Here, the facts establishing Clark's convictions for the three counts of attempted arson were not independently supportable, separate, and distinct. All three convictions arose from the same act of attempted arson. *See Belser v. State* (2000) Ind.App., 727 N.E.2d 457, 462 (vacating multiple arson convictions arising from the same intentional setting of one fire). Although arson for hire and arson with the intent to defraud an insurance company may not necessarily have the same motivation, they both arose from Clark offering to pay money for someone to burn his house so that he could collect the insurance proceeds. Also, this case does not fit within a situation where the Legislature has created multiple punishments because of differences in the severity of a single act. Therefore, we reverse Clark's convictions for attempted arson and attempted arson with the intent to defraud an insurance company and affirm the attempted arson for hire conviction.

separate concurrence, Justice Sullivan, drawing no distinction between an element which is inherently included and one which is included "as charged," concluded that Justice Dickson's formulation encompasses conviction for an act which is an element of another crime for which the defendant is convicted and also where conviction for conspiracy when the overt act alleged as an element of the conspiracy is the same act as another crime for which the defendant is convicted. 717 N.E.2d at 55 and 56–57. Justice Boehm is of a similar view. *See* 717 N.E.2d at 57–58 and 64. However, his view is not founded upon constitutional principles, but rather upon Indiana statutes and common law.

## II.

Clark next contends that the jury instructions given at his trial were erroneous. Because we have vacated two of the three convictions, we will address only those instructions pertaining to the remaining conviction for arson for hire. Jury instructions are within the discretion of the trial court and we will not reverse unless there is an abuse of that discretion. *Simmons v. State* (1999) Ind.App., 717 N.E.2d 635, 640. The purpose of the instructions is to inform the jury of the law applicable to the facts of the particular case. To be erroneous, instructions must either as a whole misstate the law or otherwise mislead the jury. *Id.; see also Geiger v. State* (1999) Ind.App., 721 N.E.2d 891, 897.

Clark asserts that Instruction 14 misled and confused the jury, and gave incorrect information.[6] Clark contends that the instruction is erroneous because it listed only the elements of arson and not those of attempted arson. We recognize that by listing only the elements of arson, it is unclear that Clark was charged with attempted arson. Be that as it may, when this instruction is read with a separate instruction on attempt, as it was in this case, we conclude that the instructions when considered as a whole did not mislead the jury. Clark also alleges that the instruction is confusing because its wording suggests that he paid himself for the arson. The instruction does not directly discuss Clark's actions in the realm of accomplice liability, and this may have misled the jury. However, there is a separate instruction explaining accomplice liability which would have alleviated any confusion. The trial court did not abuse its discretion in giving this instruction.[7]

## III.

Clark additionally claims that the jury instruction on accomplice liability was erroneous.[8] It is well established that a person can be charged as a principal and convicted as an accomplice. *Rainey v. State* (1991) Ind.App., 572 N.E.2d 517, 519. Here, Clark was charged as a principal and convicted under accomplice liability. Clark states that the instruction should have listed the specific conduct which made him an accomplice. The instruction correctly states the law with regard to accomplice liability, and the evidence supports Clark's role as an accomplice. Clark's challenge to this instruction, instead, disputes the sufficiency of the evidence that Clark was an accomplice, and we will not reweigh this evidence. The trial court did not err in giving this instruction.

---

6. Instruction 14 purports to instruct with regard to attempted arson. However, it reads in pertinent part: "The crime of arson is defined by statute as follows: a person who attempts to commit arson when acting with the culpability required for commission of the crime of arson, he engages in conduct, by means of fire or explosive, knowingly or intentionally damages property of any person for hire commits arson for hire, a Class B felony. To convict the defendant, the State must have proved each of the following elements:
 The defendant Ernest R. Clark
 1. By means of fire or explosive
 2. Knowingly or Intentionally
 3. Damaged Property of Ernest R. Clark
 4. For hire...." Record at 168.

7. Even a superficial reading of Instruction 14 leads to the unerring conclusion that it is not a correct statement of the law. Clearly I.C. 35–43–1–1 does not define the crime of arson in terms of "a person who attempts to commit arson" as does the instruction. Furthermore, the instruction is a grammatical and syntactical disaster. It should not have been given. Nevertheless and in light of the other instructions given, we do not conclude that the giving of Instruction 14 is cause for reversal.

8. Instruction 17 reads: "[a]iding, inducing or causing an offense is defined by statute as follows: a person who knowingly or intentionally aids, induces, or causes another person to commit an offense commits that offense, even if the other person has not been prosecuted for the offense, has not been convicted of the offense, or has been acquitted of the offense." Record at 173.

The judgment with respect to the attempted arson for hire conviction is affirmed. The judgment is otherwise reversed and the matter remanded for the trial court to vacate Clark's convictions for attempted arson and attempted arson with the intent to defraud an insurance company.

BAILEY, J., concurs.

VAIDIK, J., concurs in part, concurs in result in part and files separate opinion.

**VAIDIK, Judge, concurs in part and concurs in result in part**

I concur fully with the majority on issues two and three. However, I only concur in result on issue one. I do so because I believe the double jeopardy issue should be analyzed under the actual evidence test enunciated in *Richardson v. State*, 717 N.E.2d 32 (Ind.1999) and not the common law. In *Richardson,* a majority of our Supreme Court set forth two tests the statutory elements test and the actual evidence test to determine whether the Indiana Double Jeopardy Clause prohibits multiple punishments for the same offense. Two or more offenses were deemed the same offense for double jeopardy purposes if, with respect to either the statutory elements of the challenged offenses or the actual evidence used to convict, the essential elements of one challenged offense also established the essential elements of another challenged offense. *Richardson,* 717 N.E.2d at 49. In my opinion, the *Richardson* actual evidence test was meant to supersede the common law. Nevertheless, the majority analyzes this case by citing the common law rule of *Thompson v. State,* 259 Ind. 587, 290 N.E.2d 724, 727 (1972) and not the actual evidence test of *Richardson*. While the difference might not make a difference and the distinction is admittedly minute, analyzing the case using *Thompson* implies that the common law analysis survives *Richardson*.

Applying the actual evidence test, the evidence must be examined to determine whether each challenged offense was established by separate and distinct facts. As the majority correctly concludes, the attempted arson, the arson for hire and the arson with the intent to defraud all arose from Clark offering to another person money to burn his house so that he could collect insurance proceeds. Thus, each offense was not established by separate and distinct facts. Therefore, I concur with the majority in reversing Clark's convictions for attempted arson and attempted arson with the intent to defraud an insurance company and affirming the attempted arson for hire conviction.