MILTON C. HAUK v. STATE OF INDIANA.

[No. 1-973A172. Filed June 13, 1974.]

*Bob Good,* of Shelbyville, *Brunner, Brown & Brunner,* of Shelbyville, for appellant.

*Theodore L. Sendak,* Attorney General, *Larry C. Gossett,* Deputy Attorney General, for appellee.

LYBROOK, J.—This is an appeal by defendant-appellant Milton C. Hauk, from a conviction of sale of a dangerous drug, to-wit: Lysergic Acid Diethylamide, commonly known as LSD, in violation of IC 1971, 16-6-8-3 (Burns Code Ed.).

Hauk was charged by affidavit, tried by jury, found guilty, and sentenced to imprisonment for a period of not less than one (1) nor more than ten (10) years and fined $250.00.

Hauk presents four alleged errors for review upon appeal:

(1) Whether certain remarks by the trial judge concerning an LSD tablet prevented Hauk from having a fair trial?

(2) Whether the trial court erred in failing to instruct the jury on the crime of possession of a dangerous drug as a lesser included offense of sale of a dangerous drug?

(3) Whether the trial court erred in allowing the State to present certain rebuttal testimony?

(4) Whether the evidence revealed that the defendant was entrapped?

The facts most favorable to the State are:

Between December 1, and December 15, 1971, Joseph D. Hale, an Indiana State police informer, was assisting the State Police in an investigation of drug traffic in the Shelbyville area. To that end, Hale became acquainted with defendant-appellant Hauk and, prior to December 13, 1971, made two police supervised drug purchases from Hauk. On December 13, 1971, Hale, accompanied by Indiana State Police detective Louis Cinko, went to Hauk's home in Shelbyville. Hale introduced Cinko as a friend, and they were invited in by Hauk. The three of them engaged in a general discussion concerning drug availability in the Shelbyville area, narcotics agents, and police. During this conversation Hauk ironically boasted that some of the most incompetent narcotics agents in the State were those of the State Police and that there wasn't a "narc" in the world that could "bust" him because he was too "slick" for them. At this point, detective Cinko asked Hauk if he knew any place where he (Cinko) and Hale could buy some marijuana or hash. Hauk replied in the negative but added that he had two tablets of "white acid" for sale if either Cinko or Hale were interested. Cinko purchased these two tablets for $3.00. Later chemical analysis showed these tablets to be LSD.

## ISSUE I.

The record reveals the following exchange during the State's presentation of evidence:

"MR. LUX: State offers into evidence State's Exhibit No. 1. MR. GOOD: I have no objection to the tablet itself, Your Honor, but the notations on the container are (inaudible) in my judgment . . .

COURT: Well, the tablet, I don't want to take it out of the container.

MR. GOOD: Well, let's have them put it in something else then because that's prejudicial.

COURT: (Inaudible).

MR. LUX: Everything has been testified to that's on there. Everything that is on there has been testified to. He most certainly did. Officer Cinko testified to that.

MR. GOOD: That's a conclusion.

COURT: All right. (Inaudible) Do you have something, a little box?

COURT REPORTER: No. Oh, wait a minute. I do.

COURT: Well, it makes—you can put it in a box to exhibit it to the Jury if you will turn it around. Now, if that's LSD you can get it through your hands. I don't want anybody to have a fit including myself.

MR. GOOD: She's got another plastic case here that don't have anything on it.

COURT: All right. Then put it in that and show it to the Jury, and then we will put it back into this in case somebody else wants to—here you do it.

A. You want me to transfer it?

COURT: Yeah. You handle it.

A. Its not quite that dangerous.

(INAUDIBLE)

COURT: There. Keep that.

Q. Now, based upon those tests—

COURT: You've offered into evidence—now, wait a minute. Let's get—State's Exhibit 1, you have no objections now?

MR. GOOD: No.

COURT: States Exhibit 1 is introduced into evidence.

Q. Based upon those tests that you testified to, do you have an opinion as to what State's Exhibit No. 1 is?

A. Yes.

Q. And what is that opinion?

A. The material is LSD or lysergic acid diethylamide.

MR. LUX: The State now requests permission to exhibit State's Exhibit No. 1 to the Jury, Your Honor.

COURT: Don't—it's sorta small, don't let it get unhitched there."

Hauk alleges that these remarks gave the jury the impression that a single tablet, encased in plastic, was so dangerous

that it might cause physical harm to the jurors by simply touching it. This impression, according to Hauk, prevented him from having a fair trial. Nevertheless, Hauk failed to object to these remarks. He explains that this failure to object at the time the remarks were made was an effort to avoid offending the court and giving the matter more attention than it deserved. This explanation does not suffice.

In order to preserve for appeal, asserted error concerning improper and prejudicial remarks by a trial judge in the presence of the jury, an objection to the remarks must be made during the proceedings and before the jury retires for deliberation. A party may not sit idly by without making such objections, await the outcome of the trial, and then raise the issue. *Moore* v. *State* (1972), 154 Ind. App. 482, 290 N.E.2d 472. As shown in *Coakley* v. *State* (1972), 152 Ind. App. 280, 283 N.E.2d 392, counsel's belief concerning the futility of action after such remarks are made is an inadequate excuse. The *Coakley* court, citing *Rexroat* v. *State* (1964), 245 Ind. 688, 201 N.E.2d 558, said:

". . . [I]f . . . [the Defendant] thinks misconduct is of such a character that the damage cannot be repaired by any action of the court, [then Defendant should] move to discharge the jury or take such other steps as he may think will secure to him a fair trial. If he fails to do this, and permits the case to proceed to final determination, he must be deemed to have waived all questions arising out of such alleged misconduct." 283 N.E.2d at 394.

Hauk's failure to take appropriate action to preserve this alleged error for appeal constitutes waiver of all questions arising from these remarks. We find no error under this issue.

## ISSUE II.

Under this issue, Hauk alleges that the failure of the trial court to instruct the jury on the offense of possession of dangerous drug is reversible error. However, Hauk readily admits that he neither tendered an instruction on this subject nor objected to the trial court's failure to give such an instruction.

Dispositive of Hauk's contention is Ind. Rules of Procedure, Criminal Rule 8 (B), which reads:

"The court shall indicate on all instructions, in advance of the argument, those that are to be given and those refused. After the court has indicated the instructions to be given, each party shall have a reasonable opportunity to examine such instructions and to state his specific objections to each, out of the presence of the jury and before argument, or specific written objections to each instruction may be submitted to the court before argument. *No error with respect to the giving of instructions shall be available as a cause for new trial or on appeal, except upon the specific objections made as above required.*" (Emphasis Added.)

Pursuant to this rule, since appellant did not object to the failure to give such instruction and failed to tender an instruction on the subject, he is precluded from raising this issue on appeal. *Hunt* v. *State* (1973), 260 Ind. 375, 296 N.E.2d 116.

## ISSUE III.

Hauk next contends that the trial court erred in allowing the State to present certain rebuttal testimony. After the defense had rested its case, the State recalled Detective Cinko to rebut Hauk's testimony concerning the conversation during which the LSD was purchased from Hauk. Hauk had testified that the LSD that he gave Cinko had been purchased several days earlier by Hale and that Hauk was keeping the tablets for Hale. Hauk further testified that the LSD tablets were offered to Cinko only after Hale had requested Hauk to do so. Cinko rebutted this by stating that Hauk offered to sell the tablets to either Hale or Cinko and did not merely agree to give back the tablets Hale had previously purchased.

Appellant contends that Cinko's testimony was nothing more than a repetition of his prior testimony on direct-examination and as such was not proper rebuttal.

"Rebuttal evidence is, as the name indicates, that which tends to explain or contradict or disprove evidence offered

by the adverse party." *Layton* v. *State* (1973), 261 Ind. 251, 301 N.E.2d 633, 636. The admissibility of rebuttal testimony is within the sound discretion of the trial court, even if the rebuttal testimony is related to a matter not in rebuttal:

".  .  . we recognize that it is within the sound discretion of the trial court to permit a witness to testify during rebuttal regarding a matter which is not in rebuttal but is related to the State's case in chief, and the irregularity in so doing will not be treated as reversible error unless the defendant was prevented from presenting rebuttal evidence thereto. Griffith v. State (1959), 239 Ind. 321, 157 N.E.2d 191; Hollowell v. State (1971), [256] Ind. [467], 269 N.E.2d 755." *Trinkle* v. *State* (1972), 153 Ind. App. 524, 288 N.E.2d 165, 168.

Appellant did not allege that he was prevented from presenting evidence to rebut Cinko's testimony. Nor has he in any other manner demonstrated an abuse of discretion by the trial court in allowing Cinko's rebuttal testimony. We therefore find no error raised in Hauk's third issue.

## ISSUE IV.

The final issue raised by Hauk is that of entrapment. He argues:

(A)  That prior to initiating the investigation of Shelbyville drug traffic, the State Police had no cause to suspect Hauk was engaged in any illegal conduct; and
(B)  That the evidence shows he was induced by State Police and undercover agents to commit a crime which he had no predisposition to commit.

Hauk therefore contends that the jury verdict on the issue of entrapment was not supported by sufficient evidence. Resolution of this contention must begin with a brief examination of pertinent Indiana authorities on entrapment.

The law of this jurisdiction regarding the defense of entrapment, as set forth in *Smith* v. *State* (1972), 258 Ind. 415, 281 N.E.2d 803; *Walker* v. *State* (1970), 255 Ind. 65, 262 N.E.2d 641; and *Gray* v. *State* (1967), 249 Ind. 629, 231 N.E.2d 793; is in accord with the

majority decision reported in *United States* v. *Russell* (1973), 411 U.S. 423, 93 S.Ct. 1637. These cases adhere to the so-called subjective approach to the defense of entrapment and hold generally that where the criminal design originates in the minds of the police officers or their agents, instead of the accused, and the accused is, by deceitful representation, persuasion or inducement, lured into the commission of a criminal act, the State is estopped from prosecuting therefor. This does not mean, however, that police are prevented from detecting those engaged in criminal conduct as well as those ready and willing to commit further crimes should the occasion arise. Indeed, such detection is their duty. It merely means that police officers may not take steps to lure otherwise innocent persons to commit criminal acts.

Under the subjective approach, the thrust of the defense of entrapment focuses on the intent or predisposition of the defendant to commit the crime. An offender possessing such a predisposition may not complain of entrapment if the police and their agents merely create an opportunity for commission of the crime and the offender, of his own volition, takes advantage of such opportunity. Thus a distinction is made between the trap for the unwary innocent and the trap for the unwary criminal. *Smith* v. *State, supra; Sherman* v. *United States* (1958), 356 U.S. 369; 78 S.Ct. 819, 2 L.Ed.2d 848. Therefore, under our subjective approach to entrapment, it is only when the government's deception actually implants the criminal design in the mind of otherwise innocent persons that the defense of entrapment comes into play. *United States* v. *Russell, supra,* at 1645.

Once the defendant has raised the defense of entrapment, Indiana courts apply an additional rule of probable cause for the protection of the defendant, thereby incorporating into our subjective approach important aspects of the objective approach to entrapment adhered to by a minority of the United States Supreme Court

Justices.[1] Under this rule, when the defendant raises the issue of entrapment, he thereby imposes upon the State the burden of proving that it had probable cause to suspect that defendant was engaged in illegal conduct. *Walker* v. *State, supra.* Such a rule does not materially hamper the investigatory processes of police since all that is required is a showing of probable cause for suspecting the accused of criminal conduct.

Thus, before the State affords a particular suspect an opportunity to commit a crime there must be probable cause to suspect that the person is engaged in criminal conduct.

However, contrary to Hauk's first argument under this issue, it is not necessary for the officers to have all the information necessary to establish probable cause before undertaking a criminal investigation. It is sufficient if during the investigation, but before the transaction which is alleged to be entrapment, the officers acquire the information which supplies probable cause. *Walker* v. *State, supra; Smith* v. *State, supra.*

In the present case, the evidence shows that informant Hale had infiltrated the Shelbyville drug traffic and had, prior to December 13, 1971, made two police-controlled drug purchases from Hauk. We hold these purchases to constitute sufficient basis for probable cause for suspecting Hauk, and therefore conclude that the police activities leading to Hauk's arrest do not violate the above probable cause guidelines.

In his second argument under this issue, Hauk alleges that he was induced by State Police and undercover agents to commit a crime which he had no predisposition to commit. We cannot agree.

The question of whether a defendant had a predisposition to commit the crime, as well as the question of whether defendant was entrapped, are questions of fact for the jury. *Thompson* v. *State* (1972), 259 Ind. 587, 290 N.E.2d 724; *Smith* v. *State, supra.* When such

---

1. See dissenting opinions in *United States* v. *Russell, supra.*

findings are challenged on appeal as not being supported by sufficient evidence, this court will neither weigh the evidence nor resolve questions of credibility of witnesses, but rather will review only that evidence most favorable to the State, together with all reasonable inferences deducible therefrom. When this review indicates substantial evidence of probative value to support the verdict, it will not be disturbed. *Maynard* v. *State* (1973), 158 Ind. App. 260, 302 N.E.2d 520. In our opinion, the record contains substantial evidence of probative value to support the finding that there was no entrapment. We therefore conclude that appellant has demonstrated no error under this issue.

There being no reversible error, the judgment of the trial court is affirmed.

Robertson, P.J. and Lowdermilk, J., concur.

Note.—Reported at 312 N.E.2d 92.