RAYMOND R. HURT *v.* STATE OF INDIANA

[No. 3-975A204. Filed September 29, 1977. Rehearing denied November 16, 1977. Transfer denied May 26, 1978.]

*John F. Hoehner,* of Valparaiso, for appellant.

*Theodore L. Sendak,* Attorney General, *K. Richard Payne,* Deputy Attorney General, for appellee.

HOFFMAN, J.—The appellant Raymond R. Hurt was charged by information with robbery. After a trial by jury on March 6 and 7, 1975, the jury was unable to reach a verdict. On Monday, March 10, 1975, a second trial commenced and Hurt was convicted of robbery[1] in violation of IC 1971, 35-13-4-6 (Burns Code Ed.). After a pre-sentence investigation, the trial court imposed sentence of 10 to 25 years and ordered that Hurt serve the sentence consecutively to a sentence he is currently serving at the Indiana State Prison.

The evidence reveals that on July 11, 1974, Robert Hyde managed a gasoline station in Portage, Indiana. Daylight had already arrived when at 5:50 A.M. Hyde noticed a yellow automobile with a black vinyl top pull into the empty station and stop in front of the office door. While Hyde's back was to the door, a man came in and inquired whether Hyde had a "pop machine." After Hyde replied in the negative, the man advised him not to turn around. Hyde turned around to see a man holding a gun in his left hand. The man demanded money and took $42 from the

---

1.  In the first trial Hurt was charged in Count II with commission of a crime while armed with a deadly weapon. IC 1971, 35-12-1-1 (Burns Code Ed.). Before the jury was sworn in the trial of March 10 and 11, 1975, the State nolle prossed Count II.

frightened Hyde. Hyde observed his assailant in the lighted office for a period of four to five minutes from a distance of three to six feet. During the trial Hyde described his assailant as a man in his late twenties, about five feet ten inches tall, 170 pounds, with long black hair and a full beard, and dressed in light-colored shirt and pants. In court Hyde positively identified Hunt as the man who robbed him.

Hurt first contends that the trial court erred in ordering that the sentence of 10 to 25 years imposed herein be served consecutively to a sentence he is now serving. Hurt was on parole from the Indiana State Prison at the time he was charged with the present offense. He argues that only the Indiana Parole Board has authority to order him to serve the sentence herein consecutively.

IC 1971, 11-1-1-11 (Burns Code Ed.), provides, in pertinent part:

"Any prisoner who commits a crime while at large upon parole and who is convicted and sentenced therefor may be required by the board to serve such sentence after the original sentence has been completed."

The Indiana Parole Board thus has discretion to decide whether the second sentence imposed upon a parolee should run concurrent with or consecutive to the completion of the first sentence. *Alcorn v. State* (1972), 258 Ind. 185, 279 N.E.2d 800. The Indiana Parole Board is a part of the executive department of our State government. *See,* IC 1971, 11-1-1-7 (Burns Code Ed.). The courts may not usurp the functions of the executive department of government. *Columbia Properties v. St. Bd. Tax Commrs.* (1953), 232 Ind. 262, 111 N.E.2d 891 (cert. denied); *Tucker v. State* (1941), 218 Ind. 614, 35 N.E.2d 270; Article 3, § 1, Constitution of Indiana.

In ordering that Hurt serve the present sentence consecutively to the sentence he is already serving, the trial court encroached upon the authority of the Parole Board, contrary to the separation of powers doctrine as stated in Article 3, § 1, Constitution of Indiana. The order that Hurt serve the sentence herein consecutively must be vacated.

Hurt next contends that the trial court erred in failing to hold a hearing on his verified motion for a change of venue from the county, filed pursuant to Ind. Rules of Procedure, Criminal Rule 12. Hurt filed his verified motion before selection of the jury commenced in his second trial. Hurt attached to his motion two newspaper articles which reported failure of the jury in his first trial to agree on a verdict, one of which discussed the evidence in the case. He argued that the articles were so prejudicial as to require a change of venue from the county.

Ind. Rules of Procedure, Criminal Rule 12, *supra*, provides in pertinent part:

"Upon the filing of a properly verified application, a change of venue from the county shall be granted in all cases punishable by death and may be granted in all other cases when in the court's discretion cause for such change is shown to exist after such hearing or upon such other proof as the court may require."

Hurt principally relies upon *Hanrahan v. State* (1968), 251 Ind. 325, 241 N.E.2d 143, wherein the court construed language in former Supreme Court Rule 1-12C identical to the language of Criminal Rule 12, *supra*, quoted above. In *Hanrahan* the record revealed that the prosecution did not present any answer or evidence to rebut the appellant's verified motion for change of venue from the county and that the appellant was not afforded a hearing or an opportunity to present evidence before the trial court summarily overruled his motion. The court held:

"[T]hat to deny an uncontroverted, verified application for change of venue without affording petitioner some opportunity to present additional evidence in support of said application is an abuse of discretion by the trial court, and that such a denial in this case constitutes reversible error. It should be noted that this holding does not require a refutation by the prosecution in all cases before the trial court can overrule a verified application for a change of venue; the credibility of the application can be questioned even absent such a refutation. But where the credibility of an uncontroverted verified application is to be the sole basis for the denial, the petitioner should be allowed a

hearing or other opportunity to bolster his credibility with supporting evidence." (251 Ind. at 334, 241 N.E.2d at 148.)

An examination of the record reveals that this case is distinguishable from *Hanrahan v. State, supra.* At the time Hurt's attorney made his motion for change of venue from the county he stated, "I think my reasons for the request are sufficiently put forth in the motion itself . . .", which indicates that counsel did not plan to offer any evidence beyond the two exhibits attached to the motion. The State refuted the application by arguing that the articles themselves were insufficient to justify the change of venue. The prosecutor suggested, and the trial judge agreed, that voir dire examination would permit the court to determine whether any of the prospective jurors had read the articles and whether such knowledge would affect their impartiality. The trial judge assured counsel that any prospective juror who had read the article and formed opinions about the case would be removed for cause. During the ensuing voir dire examination, three jurors acknowledged having read one of the articles. None of the three remembered any details of the story, and all indicated to the judge that if selected as jurors their decision would be based only upon the evidence heard in the trial. Finally, when the trial court afforded Hurt's attorney the opportunity to inquire further on the subject, he declined.

The trial court had the discretion to determine the credibility of Hurt's verified application for change of venue from the county. *Hanrahan v. State, supra.* In making that determination the trial court was required to weigh the content of the exhibits of publicity and determine their effect on the "public attitude" toward the defendant. *Brown v. State* (1969), 252 Ind. 161, 173, 247 N.E.2d 76, 83. The record in this case shows that the trial court afforded Hurt the opportunity to support his motion with additional evidence and to explore the impact of the newspaper articles on the prospective jurors. The record demonstrates that the trial court did not abuse its discretion in denying Hurt's motion for change of venue from the county.

Hurt next contends that the trial court committed reversible

error in informing the prospective jurors during voir dire that the jury in the former trial was unable to reach a decision. He argues that the trial judge was prohibited from referring to the prior trial by IC 1971, 35-1-42-2 (Burns Code Ed.), which provides:

"The granting of a new trial places the parties in the same position as if no trial had been had; the former verdict cannot be used or referred to, either, in the evidence or in the argument."

This statute would prohibit the use of the former trial being used or referred to in the evidence or in the argument. In the case at bar the trial judge made mention of the prior proceedings as a necessary introductory remark preceding voir dire examination of the jury necessitated by Hurt's motion. This in and of itself does not demonstrate reversible error.

Hurt further asserts that the judge's remark prejudiced his trial by planting a "seed of puzzlement" in the minds of the prospective jurors. Hurt has the burden to show that he was placed in a position of grave peril as a result of the judge's remark. *See, Dewey v. State* (1976), 264 Ind. 403, 345 N.E.2d 842, 847.

The alleged improper remark occurred near the beginning of voir dire in the following statement:

"THE COURT: Before the attorneys begin their examination I will state that this case was tried Thursday and Friday this last week and the jury that we had at that time was unable to make a decision in the case. So we are back here this morning to try the same case again.

"There was an article in the Vidette Saturday morning concerning the fact that the jury was unable to agree and the article also stated some of the facts and circumstances surrounding the trial of this case.

"Now, it's necessary for the court to know at this time which of the jurors have, in fact, read that article. Do you recall reading it? State of Indiana versus Hurt. Which of you have or remembers reading the article? Just three."

The context of the statement reveals that the judge's remark was prefatory to his voir dire of the prospective jurors regarding the

effect of the allegedly prejudicial newspaper articles. Moreover, after Hurt's attorney moved for discharge of the venire due to the remark, he rejected the judge's offer to admonish the jury to disregard the reference to the former trial. On the facts of this case, the trial court's comment does not constitute reversible error.

Hurt next maintains the trial judge's interruptions of defense counsel during his cross-examination of the State's identification witness interfered with his attempted impeachment of the witness and improperly lent credence to the identification testimony.

Hurt failed to object to any of the alleged instances of judicial misconduct. In order to preserve for appeal asserted error concerning improper and prejudicial remarks by a trial judge in the presence of the jury, an objection to the remarks must be made during the proceedings and before the jury retires for deliberation. *Hauk v. State* (1974), 160 Ind. App. 390, 312 N.E.2d 92. Hurt's failure to object failed to preserve for appeal any error arising from the remarks. *Webb v. State* (1972), 259 Ind. 101, 284 N.E.2d 812; *Hauk v. State, supra.*

Hurt asserts that fundamental error is an exception to the rules requiring proper in-trial objection as a prerequisite to raising this issue on appeal. *See, Malo v. State* (1977), 266 Ind. 157, 361 N.E.2d 1201. The fundamental error doctrine permits a reviewing court to consider the merits of an improperly raised error if the court finds that "the record reveals error so prejudicial to the rights of the Appellant that he could not have had a fair trial." *Grier v. State* (1968), 251 Ind. 214, 217, 240 N.E.2d 494, 496; *Winston v. State* (1975), 165 Ind. App. 369, 332 N.E.2d 229.

Hurt argues that the trial judge's interruptions of his cross-examination of Mr. Hyde, the identification witness, constitute fundamental error because they deprived him of a fair and impartial trial.

A defendant may be deprived of a fair and impartial trial if the trial judge's interruptions of the proceedings create an atmosphere which actually prevents the orderly presentation of the case or the ascertainment of the truth. *Dixon v. State* (1972), 154 Ind. App. 603, 290 N.E.2d 731. *See*, Article 1, §§ 12 and 13, Constitution of Indiana. The *Dixon* court explained that:

> "[A] trial judge must necessarily have considerable latitude in the conduct of the proceedings in order to maintain discipline and control of the trial. The other side of the coin is, however, that reversible error may be committed if the trial judge abuses his discretion by intrusion of self into the proceedings in such a manner that presentation of the defendant's case is jeopardized. It becomes a due process question—a matter of providing a defendant was a complete and unobstructed opportunity to be heard." (154 Ind. App. at 620, 290 N.E.2d at 740.)

On appeal it is the function of this court to determine whether the trial court's conduct of the proceedings denied the defendant a fair trial. *Campbell v. State* (1975), 164 Ind. App. 432, 329 N.E.2d 55, 58.

In this case the trial judge did not unnecessarily interrupt counsel's attempted impeachment of the State's identification witness. Hyde positively identified Hurt in court as the robber based upon his observations at the scene of the offense. *See, Bowen v. State* (1975), 263 Ind. 558, 334 N.E.2d 691. When the trial judge offered Hurt's counsel the opportunity to inquire specifically about the line-up, the attorney declined the invitation to probe the suggestiveness of the pretrial identification procedure. The trial court did not improperly curtail Hurt's cross-examination of Hyde and no fundamental error can be shown.

Hurt next contends that the trial court erred in refusing to give defendant's tendered Instruction No. 5, which stated:

> "You are hereby instructed by the Court that where the sole identification witness describes the accused as being 5' 10" and 170 lbs. and where in fact the accused is 5' 8" and 130 lbs., such testimony constitutes a major discrepancy and gives rise to a mere suspicion which is insufficient to support a verdict of guilty in this case."

Hurt argues that the instruction was proper because the identification evidence amounted to a "mere suspicion of identification."

The determination of the weight and credibility of identification testimony by the victim of a crime is within the province of the trier of fact. *Alexander v. State* (1973), 158 Ind. App. 698, 304 N.E.2d 329. In a jury trial, the trial court has no right to invade that province. *Pritchard v. State* (1967), 248 Ind. 566, 230 N.E.2d 416. An instruction in a criminal case is erroneous as invading the province of the jury if the instruction intimates an opinion of the credibility of a witness or the weight to be given to his testimony. *Taylor v. State* (1972), 257 Ind. 664, 278 N.E.2d 273; *Garvin v. State* (1970), 255 Ind. 215, 263 N.E.2d 371; *Pritchard v. State, supra.*

Defendant's tendered Instruction No. 5 intimates the opinion that the testimony of the sole identification witness was insufficient to support a verdict of guilty. Hence the instruction invades the province of the jury and was properly refused.

Hurt finally asserts that the trial court erred in denying his request for a transcript of the prior trial to aid in his attempted impeachment of the State's identification witness.

The record shows that Hurt attempted to impeach Mr. Hyde, the victim of the robbery, on the basis of a believed inconsistency with his testimony at the first trial regarding whether the assailant had scars or tattoos. After a bench conference off the record, the following colloquy occurred:

"THE COURT: Can you be back here tomorrow, Mr. Hyde?

"THE WITNESS: Yes, I can.

"[PROSECUTOR]: Mr. Hyde has come over here a couple of days and Mr. Hoehner had Friday afternoon to notify Steve Haight to get a transcript.

"THE COURT: I think you are going to have to use what Mr. Haight has right now.

"[DEFENSE COUNSEL]: Your Honor, I would formally request that I be given a written transcript of the testimony.

"THE COURT: I will formally deny your request because I can't read that stuff and Mr. Haight is taking the trial here.

"We have gone over portions of the transcript and I haven't found sufficient grounds for impeachment purposes of it yet."

Moments later defense counsel attempted to elicit inconsistent testimony about Hyde's pretrial identification of photographs, and the following colloquy occurred:

"[DEFENSE COUNSEL]: Your Honor, last Thursday he picked out one photograph and that's all he picked out.

"THE COURT: Look, we have a trial going today, not last Thursday.

(Whereupon, a discussion was had off the record at the bench.)

"[DEFENSE COUNSEL]: Your Honor, I am going to have to formally request the transcript of last Thursday's proceedings.

"THE COURT: You can get it done overnight if Mr. Haight can get it done. Let's go ahead."

In *Britt v. North Carolina* (1971), 404 U.S. 226, 92 S.Ct. 431, 30 L.Ed.2d 400, the defendant's three-day murder trial ended in a mistrial when the jury reported a hopeless deadlock. Before the retrial the following month, the trial court denied the indigent defendant's motion for a free transcript of the first trial. The Supreme Court at 227-28 of 404 U.S., at 433-34 of 92 S.Ct., stated the applicable rules:

"Griffin v. Illinois [(1956), 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891] and its progeny establish the principle that the State must, as a matter of equal protection, provide indigent prisoners with the basic tools of an adequate defense or appeal, when those tools are available for a price to other prisoners. While the outer limits of that principle are not clear, there can be no doubt that the State must provide an indigent defendant with a transcript of prior proceedings when that transcript is needed for an effective defense or appeal. * * *

"In prior cases involving an indigent defendant's claim of right to a free transcript, this Court has identified two factors that are relevant to the determination of need: (1) the value of the transcript to the defendant in connection with the appeal

or trial for which it is sought, and (2) the availability of alternative devices that would fulfill the same functions as a transcript. * * *

"We agree with the dissenters that there would be serious doubts about the decision below if it rested on petitioner's failure to specify how the transcript might have been useful to him. Our cases have consistently recognized the value to a defendant of a transcript of prior proceedings, without requiring a showing of need tailored to the facts of the particular case. As Mr. Justice DOUGLAS makes clear, even in the absence of specific allegations it can ordinarily be assumed that a transcript of a prior mistrial would be valuable to the defendant in at least two ways: as a discovery device in preparation for trial, and as a tool at the trial itself for the impeachment of prosecution witnesses." (Footnotes omitted.)

The court held, however, that the State court properly determined that the transcript requested was not needed for an effective defense because the petitioner conceded that he had available an informal alternative which was a substantial equivalent to a transcript.

In the case at bar Hurt, an indigent, has been represented by counsel throughout the proceedings. Hurt has not conceded the availability of a substantial equivalent to a transcript of the prior trial, nor does it appear that one existed. The record shows, however, that Hurt did not make a pretrial motion for the transcript of the first trial; instead his oral request was made during his cross-examination of the State's identification witness. When Hurt waited until the middle of the trial to request the prior transcript, his request was tardy and the trial court did not err in denying his request. *See, United States v. Hibler* (9th Cir. 1972), 463 F.2d 455 (denial of defendant's request for prior transcript proper when defense counsel did not request the transcript until the jury was about to be impaneled). The advisable procedure for Hurt to have followed would have been to move for a copy of the prior transcript before the commencement of the retrial and to move for a continuance until the transcript or a substantial equivalent could be prepared. *See e.g., United States v. Mullen* (6th Cir. 1977), 550 F.2d 373.

The judgment of the trial court is affirmed. The portion of the sentencing order requiring that Hurt serve the sentence herein consecutively to the sentence he is now serving is vacated and the cause is remanded to the trial court to amend the sentence consistent with this opinion.

Affirmed and remanded with instructions.

Garrard, J. concurs.

Staton, P.J. concurs in result.

NOTE—Reported at 367 N.E.2d 1109.