William WATTS, Appellant
(Defendant Below),

v.

STATE of Indiana, Appellee
(Plaintiff Below).

No. 1–1081A299.

Court of Appeals of Indiana,
First District.

April 29, 1982.
Rehearing Denied June 4, 1982.

Frank E. Spencer, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Stephan E. Wolter, Deputy Atty. Gen., Indianapolis, for appellee.

ROBERTSON, Judge.

William Watts (Watts) appeals his convictions for possession of marijuana, a class D felony, and possession of a controlled substance, cocaine, a class D felony, at his trial to a six member jury.

We affirm.

Watts raises five issues for our review arguing: 1) that the search warrant, which yielded the evidence supporting the State's case, was invalid because it inadequately described the premises to be searched; 2) that his motion for a mistrial was improperly denied because the prosecutor questioned a police officer about his conversation with an absent informant, which constituted an "evidentiary harpoon"; 3) that a six member jury was improper because the authorizing statute, Ind.Code 33–10.5–7–6, is a "special" law which violates the equal protection clause of Indiana's constitution and because it contravenes Ind.Rules of Procedure, Trial Rule 48, Criminal Rule 21; 4) that the trial court gave an erroneous entrapment instruction containing language refering to "otherwise innocent persons"; and 5) that the trial court erred by imposing consecutive rather than concurrent sentences.

Based upon an informant's statement that Watts had marijuana packaged and ready for sale at his home, Donald Croft, a detective with the Jeffersonville Police Department, obtained a search warrant for Watts's home. The search warrant described the property to be searched as:

> a certain Dwelling, to-wit: 513 E. Chestnut St., Jeffersonville, Clark County, Indiana. Said dwelling being the residence of a Bill S. Watts. Said residence being described as follows; a wood frame, one-story house, gray in color, with white trim and green roof. The front door of the residence faces south. The house is located on the north side of Chestnut St.

Croft and several other officers executed the search warrant on March 28, 1980. Croft, accompanied by another officer, entered the front porch of 513 E. Chestnut St. and found two doors. The officers knocked on the door to the right and Watts answered. The officers identified themselves and after Watts initially resisted, they entered the room. They found marijuana in plain view and began the search. Although Watts did not physically resist, he was uncooperative. The officers requested the combination for a safe in Watts's living

room, which they ultimately found on Watts's person. The safe contained a variety of drugs including the marijuana and cocaine supporting the convictions before us.

The officers questioned Watts about what was contained in the other side of the house, behind the door to the left. Several times Watts was unresponsive, but he finally stated a dog would attack the officers if they went into the other part of the house. The officers forced open the door and upon entering discovered a separate apartment. The resident was not at home. A gun was taken by the officers and they left the apartment. Subsequently, Watts was tried and convicted of the described offenses.

■ Turning to Watts's allegation that the search warrant did not properly describe the area to be searched, we find no error. Watts argues the search warrant was defective because it did not specify which apartment at 513 E. Chestnut St., was to be searched and therefore, that the warrant violated the Fourth Amendment of the U.S. Constitution and Art. 1, Sec. 11 of Indiana's Constitution, both of which require a search warrant to be based upon probable cause and to particularly describe the place to be searched. The Supreme Court in the often cited case, *Steele v. United States*, (1925) 267 U.S. 498, 45 S.Ct. 414, 69 L.Ed. 757, set the standard for particularity stating:

> It is enough if the description is such that the officer with a search warrant can, with reasonable effort ascertain and identify the place intended.

267 U.S. at 503, 45 S.Ct. at 416.

However, in situations involving buildings, particularly dwellings with multiple occupants, search warrants have generally been held to be invalid when they failed to specify which sub-unit was to be searched. Generally, Annot. 11 A.L.R.3d 1330, 1333 (1967), *e.g. Tynan v. United States*, (9th Cir. 1924), 297 F. 177, *cert. denied*, 266 U.S. 604,

45 S.Ct. 91, 69 L.Ed. 463. The leading Indiana case on this issue is *Thompson v. State*, (1926) 198 Ind. 496, 154 N.E. 278. In *Thompson*, the warrant described the residence to be searched as "29 Mary street in the city of Evansville". The building was an old residence which contained ten rooms, two of which the defendant occupied. Our supreme court held the search was invalid stating:

> Where a building or the premises are described in the search warrant or affidavit by a single street number, and more than one family resides at such street number in the building, in a separate apartment; or where more than one separate business is carried on within the premises designated by such street and number by a separate proprietor—plainly upon principle a warrant directed to search the premises designated by such single number would be illegal and void, unless there was something in the affidavit to connect each one of the occupants of the premises with the alleged unlawful act.

154 N.E. at 279.

In the case at bar, the State concedes there were two apartments at the address in the search warrant, but argues that the warrant was proper because Officer Croft had no reason to know the house contained multiple residences.

This precise issue, whether a search warrant which inaccurately described a multiple unit dwelling by failing to specify the appropriate sub-unit is valid when the police officer obtaining the warrant has no reason to know multiple units are involved, has not been addressed by Indiana's courts. The issue was not raised in *Thompson v. State, supra*. The federal courts and several other state courts have recognized such an exception to the general rule that a search warrant which fails to specify a sub-unit is invalid.[2] *Generally*, 11 A.L.R.3d at 1344 § 8.

2. Some courts have addressed the issue in terms of probable cause. Thus, the question becomes whether the officer had probable cause to believe a single residence was involved. *United States v. Poppitt*, (D.Del.1964) 227 F.Supp. 73. The analysis involved is similar in either approach.

In particular, in the analogous cases *Owens v. Scafati*, 273 F.Supp. 428 (D.Mass. 1967) *cert. denied*, 391 U.S. 969, 88 S.Ct. 2043, 20 L.Ed.2d 883; *United States v. Santore*, 290 F.2d 51 (2d Cir. 1960), *cert. denied*, 365 U.S. 834, 81 S.Ct. 745, 5 L.Ed.2d 743; *Houser v. Geary*, 465 F.2d 193 (9th Cir. 1972) *cert. denied* 409 U.S. 1113, 93 S.Ct. 927, 34 L.Ed.2d 696, search warrants were upheld where the structures to be searched appeared to be single dwellings and were described in the search warrants by street addresses. For example, in *Santore*, the court stated:

> The house at 164 Hill Street is to all outward appearances a one-family house
> . . . .
>
> .        .        .        .        .
>
> The agents were not warned of a possible dual occupancy of the house until after they had shown the copy of the warrant to Orlando. At that moment it was too late for them, consistent with the success of their mission, to have retreated and obtained a new warrant.

290 F.2d at 67.

We think this is the proper approach and will apply it to the case at bar.

Detective Croft explained that the house appeared to be a single residence because it resembled other houses in the area which had two front doors, one leading into the living room and one into a bedroom. The informant had not indicated the existence of two apartments. The police checked Watts's telephone listing and vehicle registration, both listed his address as 513 E. Chestnut St. in Jeffersonville. There was a single mailbox at the house. The doors to the house were not numbered.

Thus, prior to their entry, the police had no reason to know separate residences were involved. Indeed, after their entry, they still were not on notice. Although they found a letter in the mail box addressed to Collen Sheenan, Watts had informed them a woman lived with him without specifying her name. The letter was not addressed to an apartment number. In response to questions about the other side of his home, Watts was at first unresponsive and then stated a large dog would attack the officers if they entered. Watts never indicated the existence of a separate apartment.

Watts has submitted a photograph, which depicts the front of his home and shows the two doors numbered one and two, to support his argument that the police had notice of two residences. Detective Croft testified that the doors were unmarked when the warrant was executed. It is axiomatic that we may not judge a witness's credibility.

Therefore, because the police were not on notice that two residences were located at the address, either actually or constructively, the trial court did not err by sustaining the search warrant and admitting the resulting evidence.

▮▮▮ We also disagree with Watts's allegation that he was entitled to a mistrial because the prosecutor "harpooned" the defense by asking an officer about his conversation with the confidential informant. The question was:

> Now Detective Leezer, could you please relate the information provided to you by this informant on September 25th, of 1979?

Before the officer could answer, Watts's counsel objected. Outside the jury's presence, he moved for a mistrial arguing the question was an "evidentiary harpoon" and hearsay. The court sustained the objection, but denied a mistrial. No admonishment was requested.

The granting of a mistrial is within the trial court's discretion and the trial court's decision will only be reversed for an abuse of that discretion. *e.g. Chambers v. State*, (1981) Ind., 422 N.E.2d 1198. We fail to see how Watts was prejudiced by the unanswered question and therefore we find no abuse of discretion. If any remedial measures were necessary, we believe an admonishment would have been appropriate. *Williams v. State*, (1981) Ind., 426 N.E.2d 662. There was no error.

▮▮▮ Nor was it improper for Watts's to be tried by a six member jury. Ind.Code 33–10.5–7–6 provides for a six member jury

when criminal cases are tried in a county court. Pursuant to Ind.Code 33–10.5–3–1 county courts have jurisdiction over class D felonies. Watts argues that T.R. 48, which is made applicable to criminal proceedings by C.R. 21, requires a twelve member jury. His argument is misdirected. T.R. 48 allows parties to stipulate that a case can be tried to a jury with less than twelve members. The rule is directed at situations where a twelve member jury would ordinarily be used and is a permissive procedural provision. IC 33–10.5–7–6 is the substantive law which specifies the jury's size for county court trials. *See*, Ind.Code 35–1–30–1, As amended by Acts 1981, P.L. 281.

■ Likewise, Watt's argument that IC 33–10.5–7–6 is special legislation which violates the equal protection clause of Indiana's constitution fails. This issue was resolved to Watts's detriment in *O'Brien v. State*, (1981) Ind.App., 422 N.E.2d 1266. We stated:

> The equal protection provisions of the state and federal constitutions are designed to prevent the distribution of extraordinary benefits or burdens to any group. Our courts have required only certain tests. Where a fundamental right is not involved, the standard of review is that the classification not be arbitrary or unreasonable and that a "fair and substantial" relationship exist between the classification and the purpose of the legislation creating it.
>
> The County Courts Act, as amended, permits two classifications of class D felony defendants—those tried in county court with a six-person jury and those tried in circuit, superior or criminal courts with a twelve-member jury. The treatment of the two groups is, for practical purposes identical. Whatever inequity may exist is not patent. No showing has been made nor authority brought to the attention of this court that the numerical size of a jury larger than five has any bearing on the outcome of a trial. Consequently the classification is not unreasonable.
>
> The logical legislative purpose for extending county court jurisdiction to include class D felonies is to relieve congestion in the circuit and superior courts and to provide a speedier, more efficient and less expensive forum for handling relatively less serious felonies. In light of this purpose and the principle that either six or twelve-member juries are equally capable of providing safeguards for the defendant, we hold that using two existing court systems, where the only relevant difference is the number of jurors, is reasonably, fairly and substantially related to a legitimate state interest in promoting the fair and efficient administration of justice.

422 N.E.2d at 1270. (Citations omitted.) *See also, Sarlls v. State*, (1929) 201 Ind. 88, 166 N.E. 270.

■ Next, Watts argues the trial court gave an improper entrapment instruction, which in relevant part stated that the entrapment doctrine "precludes police from luring otherwise innocent persons to commit criminal acts". Watts contends the "otherwise innocent" language was an incorrect statement of the entrapment law. The questioned language was taken from an explanation of entrapment in *Hauk v. State*, (1974) 160 Ind.App. 390, 312 N.E.2d 92.

In addition to the challenged instruction which was tendered by the State, the defendant's entrapment instruction was read which stated:

> I instruct you that under Indiana Law entrapment is a valid defense to a criminal charge.
>
> In order to excuse what would otherwise be criminal conduct it is necessary for the jury to find from all the evidence, that the prohibited conduct of the person was the product of a law enforcement officer or his agent, using persuasion or other means likely to cause the person to engage in the conduct; and the person was not predisposed to commit the offense. Conduct only affording a person an opportunity to commit the offense does not constitute entrapment.

The language is almost a direct quote of Indiana's entrapment statute, Ind.Code 35–

41–3–9. Therefore, reading the instructions on entrapment together, we do not think the entrapment law was misstated. However, we do see the potential for confusion in the State's instruction, particularly if it was the only entrapment instruction given, and we do not encourage its use.

■ Last, Watts contends the trial court erred by imposing consecutive two year sentences for each offense. Ind.Code 35–50–1–2 gives the trial court discretion to impose consecutive or concurrent sentences in most situations including this case. *Inman v. State*, (1979) Ind., 393 N.E.2d 767; *Mott v. State*, (1981) Ind., 402 N.E.2d 986. The trial judge noted that the quantities of drugs involved indicated they were for distribution rather than personal use. The consecutive sentences were imposed to deter that type of behavior. We find no abuse of discretion.

The trial court's judgment is affirmed.

RATLIFF, P. J., and NEAL, J., concur.